# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JH, a minor, by and through his parents and natural guardians, <br> DAVID and BRIDGET HUMPHREYS <br> Plaintiffs <br> vs. <br><br> DUNMORE SCHOOL DISTRICT, <br><br> TIMOTHY HOPKINS, in his Official and Individual capacities, <br><br> CHRIS and SANDI MILLS, individually and as parents and natural guardians of CM, a minor, <br><br> GREG and LINDSAY HUNT, individually and as parents and natural guardians of MH, a minor, <br><br> FRANK and JOLANE SOTTILE, individually and as parents and natural guardians of LS, a minor, <br><br> GREG and NICOLE WOLFF, individually and as parents and natural guardians of JW, a minor, <br><br> FRANK and MICHELLE CANTAFIO, individually and as parents and natural guardians of CC, a minor <br> Defendants | CIVIL ACTION <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

AND NOW, come the Plaintiffs, DAVID and BRIDGET HUMPHREYS, as

parents and natural guardians of JH, by and through their attorneys, Jason J. Mattioli,

Esquire, Michael J. Ossont, Esquire and David S. Sweetman, Esquire of the Mattioli Law Firm, and files the following Complaint against DUNMORE SCHOOL DISTRICT (hereinafter referred to as "Dunmore"); TIMOTHY HOPKINS (hereinafter "Hopkins") both in his official and individual capacities, CHRIS MILLS (hereinafter "C. Mills") and SANDI MILLS (hereinafter "S.Mills") (collectively, the Mills) both individually and as parents and natural guardians of CM, a minor; GREG HUNT (hereinafter "G. Hunt") and LINDSAY HUNT (hereinafter "L. Hunt") (collectively, the "Hunts") both individually and as parents and natural guardians of MH, a minor; FRANK SOTTILE (hereinafter "F. Sottile") and JOLANE SOTTILE (hereinafter "J. Sottile") (collectively, the Sottiles") both individually and as parents and natural guardians of LS, a minor; GREG WOLFF (hereinafter "G. Wolff") and NICOLE WOLFF (hereinafter "N. Wolff") (collectively, the "Wolffs") both individually and as parents and natural guardians of JW, a minor; FRANK CANTAFIO (hereinafter "F. Cantafio") and MICHELLE CANTAFIO (hereinafter "M. Cantafio") (collectively the "Cantafios"), both individually and as parents and natural guardians of CC, a minor and in support thereof avers as follows:

## **INTRODUCTION**

1.      This action is brought by a minor student, JH, who is eligible for special education services as a child with disabilities with the Dunmore School District, by

and through his parents David Humphreys (Father) and Bridget Humphreys (Mother), referred to collectively as Plaintiffs.

2.      Dunmore as well as Hopkins have violated JH's Civil Rights under Section 1983 and the 14th Amendment, and intentionally discriminated against JH, a handicapped person, and therefore seek damages under the Americans with Disabilities Act, 42 U.S.C. Section 12111 (ADA) and Section 504 of the Rehabilitation Act of 1973 (Section 504), 29 U.S.C.A. Section 794, Title IV and Pennsylvania law.

3.      Plaintiffs also bring related claims including common law claims for negligence, intentional infliction of emotional distress, vicarious liability, and breach of fiduciary duty for the incident where students filmed and disseminated a pornographic film of the Plaintiff to several other students within Dunmore by Apple AirDrop, Snapchat, and text messages. Dunmore and its employees were aware of the students sharing this embarrassing and sensitive video and did little to no investigation prior to Plaintiffs requesting the Dunmore Police Department investigate the situation. The Parent Defendants had dominion and control over the cellular devices used by the minor Student Defendants at the time those devices were utilized to commit a willful tortious action against the Plaintiff.

4.      Indeed, further embarrassment, injuries and losses to Plaintiffs could have been prevented by the exercise of reasonable diligence on the part of

Defendants and were a highly predictable consequence of Defendants' failure to a address the use of cellular devices on school property being utilized to send pornographic videos to students by students in violation of the Plaintiffs rights and in violation of the Dunmore Student Handbook.

5.     Dunmore and Hopkins' failure to take immediate and appropriate action when made aware of the dissemination of the video horrifically resulted in even further loss and damage to the Plaintiffs. Defendants caused and/or failed to stop an attack on the Plaintiffs' dignity as a human being.

6.     Plaintiffs hereby respectfully requests that this Honorable Court award them appropriate compensatory and punitive damages for the Defendants' egregious failure to meet their legal obligations to the Plaintiff under the Counts of the Complaint herein and more fully set forth below.

## **PARTIES**

7.     Plaintiff, JH is a male and minor individual who resides at 152 Walnut Street, Dunmore, Lackawanna County, PA 18512.

8.     Plaintiff, JH, brings this action by and through his parents and natural guardians, David Humphreys and Bridget Humphreys.

9.     Both Plaintiff David Humphreys and Bridget Humphreys are adults and competent individuals residing at 152 Walnut Street, Dunmore, Lackawanna County, PA 18512.

10.     At all times material hereto, the Plaintiffs were residents of Lackawanna County, the Commonwealth of Pennsylvania, located within the Middle District of Pennsylvania.

11.     At all times material hereto, the Plaintiff, JH, was enrolled in Dunmore Middle School, located in Dunmore, Lackawanna County, Pennsylvania, a public-school entity maintained, operated, and/or controlled by the Dunmore School District.

12.     Defendant Dunmore School District is a governmental entity which pursuant to State law and with receipt of a substantial amount of Federal funds, provides educational services to school aged children residing in Lackawanna County, including Dunmore, Pennsylvania. The School District is governed by a board of directors that is commissioned by the Commonwealth of Pennsylvania to administer, enforce, *inter alia*, the statutory mandates of the Individuals with Disabilities Education Act, 20 U.S.C. Section 1400, *et. seq* (hereinafter referred to as "IDEA") Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. Section 794 (herein referred to as "Section 504") and other related federally funded programs to eligible students enrolled in the district. Dunmore School District's administrative offices are located at 300 West Warren Street, Dunmore, Lackawanna County, PA 18512.

13.    Defendant Hopkins is a competent adult individual who resides in Lackawanna County, Pennsylvania, and during the 2022-2023 school year was employed by the Dunmore School District as the Middle School Principal with a business address of 370 West Warren Street, Dunmore, Lackawanna County, PA 18512.

14.    Defendants Sandi and Chris Mills are the parents and natural guardians of minor Defendant, CM. They are Defendants in both their individual capacity and their capacity as the parents and natural guardians of CM. They are both adults and competent individuals believed to be residing Lackawanna County, Pennsylvania.

15.    Defendants Greg and Lindsay Hunt are the parents and natural guardians of minor Defendant, MH. They are Defendants in both their individual capacity and their capacity as the parents and natural guardians of MH. They are both adults and competent individuals believed to be residing in Lackawanna County, Pennsylvania.

16.    Defendants Frank and Jolane Sottile are the parents and natural guardians of minor Defendant, LS. They are Defendants in both their individual capacity and their capacity as the parents and natural guardians of LS. They are both adults and competent individuals believed to be residing in Lackawanna County, Pennsylvania.

17.     Defendants Greg and Nicole Wolff are the parents and natural guardians of minor Defendant, JW. They are Defendants in both their individual capacity and their capacity as the parents and natural guardians of JW. They are both adults and competent individuals believed to be residing in Lackawanna County, Pennsylvania.

18.     Defendants Frank and Michelle Cantafio are the parents and natural guardians of minor Defendant, CC. They are Defendants in both their individual capacity and their capacity as the parents and natural guardians of CC. They are both adults and competent individuals believed to be residing in Lackawanna County, Pennsylvania.

## JURISDICTION AND VENUE

19.     This Court has jurisdiction over this action pursuant to 20 U.S.C. Section 1415(i)(2). Plaintiffs' claims arise from the IDEA and its implementing regulations, 34 C.F.R. part 300, et. seq.; Section 504 of the Rehabilitation Act of 1973; and Section 1983 of The Civil Rights Act of 1964 (hereinafter referred to as "Section 1983"), 28 U.S.C.S. Section 1331 provides that United States District Courts have original jurisdiction over matters where a federal question is raised in cases arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. Section 1343 provides that United States District Courts have original jurisdiction of any civil action to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured

by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States. This Court exercises supplemental jurisdiction over Plaintiffs' state-law tort claims pursuant to 28 U.S.C. Section 1367.

20.     Venue is proper in this Court pursuant to 28 U.S.C. Section 1391(b) as the Defendants are located in this judicial district and conduct business within this Judicial District and all Plaintiffs reside and their claims arose within this Judicial District.

## FACTUAL BACKGROUND

21.     At the time of this incident, minor plaintiff JH was a thirteen (13) year old , seventh (7th) grade male student in the Dunmore Middle School within the Defendant Dunmore School District.

22.     Further, JH is eligible for special education services and has disabilities that impact his life.

23.     Specifically, JH was diagnosed during the 2015-2016 school year with Autism Spectrum Disorder (ASD).

24.     While JH's education instruction is substantially through a general education classroom and curriculum, he attends his math and reading classes in a learning support classroom environment.

25.     Additionally, JH utilizes an Autistic Support Classroom for behavioral check-ins, help with organization, and Itinerant Support as he participates in a general education setting.

26.     As an individual with ASD, JH struggles with appropriate social skills, specifically during the time frame of this incident as he has now entered puberty as all children do as they grow up.

27.     Dunmore School District provides students with a handbook that puts forth the rules and regulations for students who attend Dunmore Middle School.

28.     The handbook contains the Dunmore Mission Statement which in part states that "all educational programs shall be **safe**, enjoyable and challenging, offering success to their participants" (emphasis added).

29.     Furthermore, in a statement to parents and students included in the handbook, Defendant Hopkins states that "[a]s partners, we share the responsibly for each child's success and want you to know that we will do everything to carry out our responsibilities."

30.     Additionally, the statement reads that "[i]t is the responsibility of every student and family to become familiar with our procedures and expectations."

31.     Unfortunately, Defendants Dunmore and Hopkins failed to live up to these expectations.

32.     On or about March 3, 2023, Defendant LS used his cellular telephone to video Plaintiff JH inside of a bathroom stall in the Dunmore Middle School.

33.     Unfortunately, due to the trouble he has with appropriate social skills due to his disability and no fault of his own, Plaintiff JH was engaging in masturbation in the stall.

34.     As part of his educational program, Plaintiff JH had been working with his autistic support teacher to overcome these difficulties.

35.     Still, in a willful, intentional, cruel, and degrading manor, Defendant LS saved this recording to his cellular telephone in order to utilize the footage to embarrass and harass his disabled classmate.

36.     Interestingly, the Handbook provided to students prohibits students from having their cell phones while in school requiring that upon entering the school, students must place all electronic devices in their locker or in device holders in their classrooms while they are in that particular class.

37.     Clearly, Defendants the Dunmore School District or Hopkins did not enforce this as LS had his cellular phone while he was on school property, during school hours.

38.     Furthermore, in an effort to "safeguard[] against inappropriate invasions of persons privacy rights," the Handbook also prohibits the taking of videos and/or photographs of other students without their consent.

39.     Clearly, this portion of the Handbook was not being enforced by Defendants Dunmore or Hopkins.

40.     Shockingly, Defendant LS then disseminated the video via Apple AirDrop making it available to anyone with an Apple iPhone in the area.

41.     AirDrop is a capability of an Apple iPhone that allows a user to share data with BLE technology. In other words, at the touch of a button, the sharer has the ability to make data and media available to anyone who is in range of their cellular device.

42.     When considering the effective range of AirDrop, the range is not a fixed distance but can reasonably be considered to reach ten (10) meters in most cases to 100 meters in every direction from the device that is sharing the data.

43.     Defendant LS made the video file of Plaintiff JH available to anyone with an iPhone within at least ten (10) meters but potentially up to 100 meters in all directions, including above or below him on different floors.

44.     In this day and age, it is logical if not certain that several faculty and staff of the Dunmore School District utilize Apple iPhones.

45.     It is therefore reasonable to suggest that Defendants Dunmore and Hopkins had knowledge of the video on March 3, 2023, as it was disseminated by LS over Apple Air Drop.

46.     However, it was not until Friday, March 31, 2023 that Plaintiffs David and Bridget Humphreys were informed about the possibility of the video existing and being shared amongst students.

47.     On March 31, 2023, Plaintiff JH's autistic support teacher was approached by another teacher, who had not previously been aware of the video, to report that she had overhead students near the entrance of her classroom stating that they had a video of JH masturbating in one of the stalls in the boy's bathroom. It was decided that the administration was to be informed immediately.

48.     Hopkins, now knowing that an official report was made by faculty, was without excuse as to his knowledge of the video.

49.     After informing Defendant Hopkins and the School Resource Officer (SRO) Springer of what they had heard, an alleged investigation began.

50.     Once informed by JH's autistic support teacher of the report, Plaintiffs David and Bridget Humphreys went to the school to speak to administration.

51.     Once at the school's administration building, the Plaintiff parents met with Defendant Hopkins, who informed JH's parents that they were able to track, through something called an ePass system, who would have been in the boy's bathroom at the same time JH was there.

52.     Hopkins told Plaintiff parents that it was narrowed down to one student, that student was brought in by Hopkins, questioned, Hopkin's was given consent to look at the student's phone to look for the video and no video was located.

53.     Based on this simplistic and lackadaisical investigation, Hopkins blatantly lied to Plaintiff Parents telling them that there was really nothing else that could be done to ensure that there was no video of their son out there or  anyway to find out who had the video.

54.     Plaintiff Parents brought up concerns about students being able to utilize cell phones in violation of the Handbook without any enforcement or consequences to no avail.

55.     Defendants Dunmore and Hopkins had a duty to ensure the safety, security, dignity, and integrity of JH's educational setting, specifically where a student was being harassed, embarrassed and the subject of criminal activity by other students based on his disability.

56.     Hopkins only looked at a student's phone, asked him some questions and simply took what was told to him as gospel in an attempt to "sweep" the incident "under the rug."

57.     Plaintiff parents did not feel comfortable with that outcome and reached back out to the school and subsequently to SRO Springer.

58.   Based on a conversation with SRO Springer, he conducted further investigation into the potential criminal act of students at Dunmore Middle School.

59.   On April 4, 2023, SRO Springer informed Plaintiff Parents that he had located the video on four student's phones.

60.   At this point, no students were suspended or disciplined for their involvement with utilizing cellular phones on Dunmore property in violation of the Handbook.

61.   Through law enforcement's investigation of the incident, four student's cell phones were found to contain the video of JH masturbating in the boy's bathroom, those students were Defendants CM, MH, LS, and JW.

62.   CM a minor, did not have the capacity to enter into a contract for cellular phone service. As such, it is believed that Defendants C. Mills and/or S. Mills had dominion and/or control over the use of the cellular device in Defendant CM's possession.

63.   Furthermore, as CM's parents, the Mills had the ability and duty to supervise how CM utilized his cellular device and failed to do so.

64.   MH a minor, did not have the capacity to enter into a contract for cellular phone service.  As such, it is believed that Defendants G. Hunt and/or L. Hunt had dominion and/or control over the use of the cellular device in Defendant MH's possession.

65.    Furthermore, as MH's parents, the Hunts had the ability and duty to supervise how MH utilized his cellular device and failed to do so.

66.    LS a minor, did not have the capacity to enter into a contract for cellular phone service. As such, it is believed that Defendants F. Sottile and/or J. Sottile had dominion and/or control over the use of the cellular device in Defendant LS's possession.

67.    Furthermore, as LS's parents, the Sottile's had the ability and duty to supervise how LS utilized his cellular device and failed to do so.

68.    Again, JW a minor, did not have the capacity to enter into a contract for cellular phone service. As such, it is believed that Defendants G. Wolff and/or N. Wolff had dominion and/or control over the use of the cellular device in Defendant JW's possession.

69.    Furthermore, as JW's parents, the Wolff's had the ability and duty to supervise how CM utilized his cellular device and failed to do so.

70.    In addition to the sharing of the video through airdrop, it was also found to have been shared through the social media application snapchat by CM to a group labeled "guerilla warfare" and it was confirmed that the video was shared with at least nineteen (19) other individuals who were members of that group.

71.    Further law enforcement analysis uncovered text messages between LS and CC on March 3, 2023 where CC states "Yo send me the vid of the sped kid jerkin

off", and another text from CC on March 7, 2023 stating, "send me the vid of [JH] jackin in the bathroom". The video was located as being sent to CC from LS on those dates.

72.    CC, a minor, did not have the capacity to enter into a contract for cellular phone service. As such, it is believed that Defendants F. Cantafio and/or M. Cantafio had dominion and/or control over the use of the cellular device in Defendant CC's possession.

73.    Furthermore, as CC's parents, the Cantafios had the ability and duty to supervise how CC utilized his cellular device and failed to do so.

74.    For reasons unknown to the Plaintiffs, SRO Springer was removed from the investigation and Det. Michael Lydon of the Dunmore Police Department took over.

75.    In addition to CM, MH, LS, and JW, nineteen (19) other peers were specifically identified as receiving the video by law enforcement.

76.    Those individuals were all interviewed and told investigators that they **did** receive the video but stated, without further review of their cell phones or an internal investigation by Defendants Dunmore School District and/or Hopkins, that they did not retain the video.

77.    Their words were simply taken as truth without any regard for the safety and/or personal security of JH.

78.     It was not until August 23, 2023 that juvenile petitions in Lackawanna County were filed against CM, MH, LS, and JW. Over five (5) months from when Dunmore and Hopkins were aware of the existence of the video.

79.     It is believed that all minor Defendants involved are still enrolled or have reenrolled in the Dunmore School District, forcing JH's educational environment to remain hostile.

80.     The actions of Dunmore, at all times relevant herein were conducted willfully, wantonly, and maliciously with reckless disregard as to the consequences as to reveal a conscious indifference to the rights and establishes intentional discrimination because of intentional and/or deliberate indifference toward Plaintiff's disability.

81.     Given the incidents that occurred at Dunmore Middle School as described herein, the failure of the School District and Hopkins to enforce the Handbook rules and regulations among its student population, created a dangerous environment for Plaintiff JH.

82.     Furthermore, while it is alleged Dunmore and Hopkins knew of the video on March 3, 2023, they were certainly made aware by other faculty on March 31, 2023 and did nothing to seek out and remove those students who were discriminating against JH and disseminating illegal videos of JH from JH's educational environment.

83.     Nothing was done to stop the minor Defendants from discriminating, harassing, or utilizing cellular devices in violation of the Handbook against other students in the Dunmore School District, specifically in this case, JH.

84.     In fact, other incidents involving students discriminating and harassing JH occurred.

85.     On or about January 4, 2024, as JH was being picked up from school by his father David, a group of male students began yelling the phrase "Beat it" toward JH, clearly in reference to the video that had been disseminated on Defendants' Dunmore and Hopkins watch.

86.     While Plaintiffs Bridget and David Humphreys were told that the incident was investigated, no students were disciplined or addressed as laid out in the Student Handbook, even though several staff and teachers were outside the school at the time of the incident.

87.     Defendants Dunmore and Hopkins clearly had and/or have a policy and/or custom of ignoring actual knowledge of violations of JH's rights by both the District and other students, and failing to appropriately investigate situations where inappropriate conduct was reported and/or suggested; ignoring its mandatory reporting obligation; and discouraging teachers and students from reporting abuses in an effort to protect themselves and their respective administrators, teachers, employees, and students from scandal, adverse publicity and/or accountability.

## COUNT I -VIOLATION OF CIVIL RIGHTS
### 42 U.S.C. Section 1983 and the I.D.E.A.
**Plaintiffs, David Humphreys and Bridget Humphreys,
as parents and Natural Guardians of Minor, JH v.
Defendants Dunmore School District and Timothy Hopkins**

88.     The preceding paragraphs are incorporated herein by reference as if fully set forth here at length.

89.     Upon information and belief, the Defendants have failed to provide Student with a free appropriate public education.

90.     As a further result, the Defendant's failure to implement a proper behavior management plan, failure to hire trained individuals in caring and instructing special needs and autistic children and the defendant's failure to properly place JH in an appropriate setting where he would be free from physical abuse, mental abuse, and or harassment by other students, Plaintiffs will have to incur additional expenses for medical and educational services.

91.     The Defendants' failure to provide JH with a free appropriate education is a systematic legal violation which violates Student's civil rights.

92.     Defendants owed JH a duty to provide free appropriate public education under IDEA, 20 U.S.C. § 1400 et. seq.

93.     Defendants further owed JH a duty to ensure that he would receive educational services in a least-restrictive environment.

94.     Defendants also owed JH a duty of care to refrain from physical and

mental abuse adequately in accordance with IDEA and the Pennsylvania Code.

95.    Defendants breached the duties described above by allowing other students to violate the rules and regulations of the Handbook, to which Defendants knew or should have known could lead to incidents like the one that has occurred here violating the Constitutional Rights of Plaintiff, JH.

96.    At all times material and relevant hereto, the actions and/or inactions of all Defendants were performed under color of state law while acting in their official capacities.

97.    Defendants Dunmore and Hopkins caused the harm complained of herein in violation of IDEA and Civil Rights Act, 42 U.S.C. § 1983.

98.    The actions by the Defendants constitute a pattern and practice of failing to provide students with special needs and entitled to individual education plans (IEPs), and JH in particular, an appropriate education for his educational needs while protecting his privacy, bodily integrity, and dignity as an individual with a disability.

99.    Plaintiff JH avers that Defendants had and have unconstitutional customs, policies and practices of failing to investigate evidence of School District employees failure to enforce rules and regulations in place along with failing to appropriately investigate misconduct, abuse and or harassment against Dunmore students by other Dunmore students in the nature of violations of their rights to

personal security, bodily integrity, as well as their right to be free from misconduct and/or abuse and/or harassment and/or discrimination, and failing to adequately supervise and train School District employees with regard to mandatory reporting obligations and maintaining, preserving and protecting students from violations of their right to personal security and bodily integrity.

100.   The conduct of Defendants, by and through their agents, employees, servants and officers and other School District personnel, as set forth above, acting under color of state law, in failing to put in place and enforce policies to adequately protect students from inappropriate conduct, was committed in deliberate and/or conscious disregard of the substantial and/or unjustifiable risk of causing harm to JH and was such as to shock the conscious. Said conduct was the cause of JH's harm.

101.   Plaintiff JH avers that the School District, by and through their agents, employees, servants and officers and other School District personnel, followed these unconstitutional policies, customs, and practices with regard to himself as hereafter set forth.

102.   The Defendants' actions constitute a conscious disregard for the plaintiff's student's rights to a free appropriate public education.

103.   The Defendants' actions were conducted willfully, wantonly, and maliciously and with such reckless disregard for the consequences as to reveal a conscious indifference to JH's rights to a free appropriate public education.

104.   As a result of the above-described violations, JH suffered damages.

105.   The conduct described above violated Plaintiff, JH's Constitutional right to Substantive Due Process and his right to be free from invasion of his personal security and/or his right to bodily integrity, as guaranteed by the 14th amendment of the United States Constitution and as remediable by 42 U.S.C. Section 1983.

106.   Dunmore School District by and through their agents, employees, servants and officers and other School District personnel, is a policymaker for the purpose of implementing School District policies and customs.

107.   As a direct and proximate result of the above stated acts and omissions, Plaintiff JH has suffered such harm as has been previously stated here in for which he is entitled to be compensated.

WHEREFORE, Plaintiffs demand the entry of judgment in their favor against Defendants, Dunmore School District and Timothy Hopkins, jointly and severally, with an award of compensatory damages, interest, costs of suit, plus punitive damages, and such other relief as the Court deems necessary and appropriate.

**COUNT II -VIOLATION OF THE 14TH AMENDMENT**
**Plaintiffs, David Humphreys and Bridget Humphreys,**
**as parents and Natural Guardians of Minor, JH v.**
**Defendants Dunmore School District and Timothy Hopkins**

108.   The preceding paragraphs are incorporated herein by reference as if fully set forth here at length.

109.   The Defendants' conduct in failing to provide JH with a free appropriate public education constitutes unlawful discrimination against JH and other children who receive and/or are entitled to special education including children on the autism spectrum in violation of the equal protection clause of the 14th amendment and in violation of due process contrary to the 14th amendment to the United States Constitution.

110.   The above-described actions of the Defendants were the direct and proximate cause of Student's injuries previously mentioned.

111.   By reason of the aforesaid, JH's civil rights were violated as guaranteed by federal statutes.

112.   As a result of the above-described violations, Plaintiffs have suffered damages.

113.   By reason of the aforesaid, including the conduct of the Defendants herein, the same shocks the conscience, so as to show minor JH's Civil Rights were violated as guaranteed by the federal statutes.

WHEREFORE, Plaintiffs demand the entry of judgment in their favor against Defendants, Dunmore School District and Timothy Hopkins, jointly and severally, with an award of compensatory damages, interest, costs of suit, plus punitive damages, and such other relief as the Court deems necessary and appropriate.

## <u>COUNT III -INDIVIDUALS WITH DISABILITY EDUCATION ACT</u>
### <u>20 U.S.C. §1400 ET. SEQ.</u>
**Plaintiffs, David Humphreys and Bridget Humphreys,
as parents and Natural Guardians of Minor, JH v.**
### <u>Defendants Dunmore School District and Timothy Hopkins</u>

114.   The preceding paragraphs are incorporated herein by reference as if fully set forth here at length.

115.   The Defendants have violated the rights of the named Plaintiffs under the Individuals with Disability Education Act (IDEA), 20 U.S.C. § 1400 et. seq. by failing to identify, evaluate, and provide the minor students, specifically in this case J.H., with a free appropriate public education and by allowing others to harass, mentally abuse and violate his personal integrity and dignity based on his disability as more particularly described above without JH's consent and in disregard to the law.

116.   As a result of the above-described violations, JH suffered damages.

WHEREFORE, Plaintiffs demand the entry of judgment in their favor against Defendants, Dunmore School District and Timothy Hopkins, jointly and severally, with an award of compensatory damages, interest, costs of suit, plus punitive damages, and such other relief as the Court deems necessary and appropriate.

## COUNT IV – VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (ADA)
## 42 U.S.C. §12100 ET. SEQ.
### Plaintiffs, David Humphreys and Bridget Humphreys, as parents and Natural Guardians of Minor, JH v.
### Defendant Dunmore School District

117.   The preceding paragraphs are incorporated herein by reference as if fully set forth here at length.

118.   The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the service, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

119.   JH is disabled. He is a student with special needs who has documented disabilities which affect several major life activities.

120.   Despite his disabilities, JH was, at all times relevant hereto, a student who is otherwise qualified to participate in defendant Dunmore's educational programs with appropriate instruction, accommodation and/or supplemental services and supports for the purposes of the ADA.

121.   Defendant Dunmore failed to provide JH with appropriate educational and related services, accommodations and/or supplemental supports and services which he required in order to have proper access to Dunmore's programs and services to make appropriate developmental and educational progress equal to that provided to children who are not disabled or who do not have such disabilities.

122. Dunmore's failure to provide a safe, appropriate educational environment to JH, and its failure to properly accommodate his disabilities, has exacerbated the impact of his disabilities, interfered with his ability to communicate with others, and to meaningfully participate with typically developing peers. Dunmore's failure has also deferred JH's ability to be engaged and be included in age-appropriate social, educational, and vocational programs, to take advantage of opportunities and services to which he would have had access if he had received appropriate related services and accommodations in a timely and effective manner. Therefore, Dunmore's failure excluded JH from participating in the mainstream environment of his school, his community, his family and to equal access to educational benefits, as enjoyed by his non- disabled classmates **in safety** based on the needs of his specific disability, ASD.

123. Dunmore owed Student the duty of care to refrain and protect him from harassment, embarrassment and a degradation of his dignity based on his disability in accordance with the ADA, and specifically, owed him the duty to be free of discrimination and abuse because of his disabilities.

124. Upon information and belief, Dunmore discriminated against JH because of his disabilities, as set forth herein, and further by failing to provide him with the same protections and opportunities that other students were provided, and by failing to protect him from the improper, cruel, and abusive treatment he suffered

as a result of his disabilities.

125.   Dunmore, at all times relevant hereto, was aware that as a child with disabilities, JH had the right to be free of discrimination in the provision of his education, and despite that knowledge, Dunmore failed to ensure that improper actions by other students would not be perpetrated upon JH and when those improper activities did occur, failed to properly investigate those allegations based on JH's disability.

126.   Furthermore, it is clear that Dunmore and its agents, servants and employees knew that violations of the Handbook were occurring and that that could reasonably lead to occurrences like the cruel and discriminatory treatment by other students, at Dunmore Middle School, yet Dunmore failed to properly train and supervise its staff, and failed to ensure that staff assigned to student were properly trained and supervised, allowing the current instance to take place.

127.   Dunmore was deliberately indifferent to JH's federally protected right to be free from discrimination in his education, as well as his federally protected right to be provided a Free Appropriate Public Education (FAPE).

128.   In placing JH in an educational environment in which he would be subject to his privacy being invaded and his dignity destroyed by allowing other students to blatantly violate Dunmore's own Rules in Regulations in place to protect students like JH, Dunmore knew or should have known that JH's rights were likely

to be violated.

129.   In failing to provide an appropriate education, and to meet the educational needs of JH, a disabled student, as adequately as it met the needs of non-disabled students, Dunmore intentionally discriminated against JH because of his disabilities.

130.   In failing to provide an appropriate education, and to meet the educational needs of JH, a disabled student, as adequately as it met the needs of non-disabled students, Dunmore was deliberately indifferent to JH's right to be free of discrimination because of his disabilities.

131.   Dunmore's actions constituted discrimination against him, on the basis of his disability, in violation of the ADA.

132.   As a result of these violations, as set forth herein, JH suffered damages.

WHEREFORE, Plaintiffs demand the entry of judgment in their favor against Defendant, Dunmore School District, with an award of compensatory damages, interest, costs of suit, plus punitive damages, and such other relief as the Court deems necessary and appropriate.

## COUNT V – VIOLATION OF SECTION 504 OF THE REHABILITATION ACT
### 29 U.S.C. §794 ET. SEQ.
**Plaintiffs, David Humphreys and Bridget Humphreys,
as parents and Natural Guardians of Minor, JH v.
Defendant Dunmore School District**

133.   Plaintiffs incorporate by reference the preceding paragraphs, including specifically all of the paragraphs in Count I, as though set forth fully at length.

134.   The Rehabilitation Act provides that "no otherwise qualified individual with a disability... shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance" 29 U.S.C. § 794(a).

135.   As a local educational agency, Dunmore receives federal financial assistance.

136.   In failing to provide an appropriate education, and to meet the educational needs of JH, a disabled student, as adequately as it met the needs of non-disabled students, Dunmore intentionally discriminated against JH because of his disabilities.

137.   In failing to provide an appropriate education, and to meet the educational needs of JH, a student with a disability, as adequately as it met the needs of non-disabled students, Dunmore was deliberately indifferent to JH's right to be free of discrimination because of his disabilities.

138.   As set forth in detail in Count II, Dunmore's actions constituted discrimination against him on the basis of his disability in violation of Section 504 of the Rehabilitation Act.

139.   As a result of these violations, as set forth herein, JH suffered considerable damages as requested in the prayer for relief.

WHEREFORE, Plaintiffs demand the entry of judgment in their favor against Defendant, Dunmore School District, with an award of compensatory damages, interest, costs of suit, plus punitive damages, and such other relief as the Court deems necessary and appropriate.

### COUNT VI – DISCRIMINATION PURSUANT TO TITLE IX
#### (20 U.S.C. § 1681, *et. seq.*)
**Plaintiffs, David Humphreys and Bridget Humphreys,
as parents and Natural Guardians of Minor, JH v.
Defendants Dunmore School District and Timothy Hopkins**

140.   The preceding paragraphs are incorporated herein by reference as if fully set forth here at length.

141.   The failure of Dunmore School District and Hopkins to enforce policies and procedures set in place to protect students like JH and others, as set forth herein, was so severe that the Plaintiff JH, was deprived of access to educational opportunities and/or benefits provided by the Dunmore School District.

142.   Dunmore School District and Hopkins created and/or subjected to the

Plaintiff, JH, to a hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) (hereinafter referred to as "Title IX").

143.   At all times material hereto, the Plaintiff JH, was a member of a protected class.

144.   At all times material hereto, Plaintiff JH was subjected to an unsafe and hostile educational environment for a student with a disability such as ASD.

145.   At all times material hereto, the Plaintiff JH, was subjected to having an explicit video taken of him and disseminated to several students in the form of discrimination by the District Defendants in their failure to enforce policies and procedures students and parents alike were ensured would be in place.

146.   At all times material hereto, JH was subject to harassment based on his disability.

147.   At all times material hereto, Plaintiff JH, was subjected to a hostile educational environment created by Dunmore and Hopkin's, either individually and/or jointly, lack of policies and procedures, and failure to properly investigate and/or address the lack of enforcement of policies and procedures students and parents were told were in place.

148.   Upon information and belief, Dunmore, and Hopkins, either individually and/or jointly, by and through its agents, servants, administration, and/or employees, had actual knowledge of the harassment of Plaintiff JH.

149.   Dunmore and/or Hopkins' failure to promptly and appropriately respond to the harassment which resulted in the Plaintiff JH, on the basis of his disability, being denied the benefits of a safe, secure, and non-hostile education setting and being subjected to discrimination in the Dunmore School District's education programs in violation of Title IX.

150.   Dunmore and/or Hopkins, either individually and/or jointly, failed to take immediate and effective remedial steps to resolve the complaint that a video, both pornographic in nature and in harassment of Plaintiff JH based on his disability and instead acted with deliberate indifference towards the Plaintiff, JH.

151.   Dunmore and/or Hopkins, either individually and/or jointly, persisted in their actions and inactions even after it has actual knowledge of the harm suffered by the Plaintiff, JH.

152.   Thus, Dunmore and/or Hopkins, either individually and/or jointly, engaged in a pattern and practice of unlawful behavior designed to discourage and dissuade students, such as JH, and the parents of students who had been harassed, embarrassed and had his dignity stripped from him from seeking

prosecution and protection, and from seeking to have this incident fully investigated.

153.  The unlawful policy and practice of Dunmore and/or Hopkins, either individually and/or jointly, as set forth herein, constituted disparate treatment of disabled students and had a disparate impact on disabled students.

154.  As the direct and proximate result of the actions and inactions of Dunmore and/or Hopkins, either individually and/or jointly, JH, has sustained the injuries and damages.

155.  Dunmore and/or Hopkins, either individually and/or jointly, acted with deliberate indifference with respect to addressing harassment that they knew had and was occurring.

156.  JH's, educational experience was thereafter permeated with discriminatory intimidation, ridicule, embarrassment, and insult that was sufficiently so severe and/or pervasive so as to alter the conditions of the JH's educational environment.

157.  As the direct and proximate result of Dunmore and/or Hopkins' conscious, deliberate and/or intentional actions and/or omissions, either individually and/or jointly, JH has suffered, and will continue to so suffer, indefinitely into the future.

WHEREFORE, Plaintiffs demand the entry of judgment in their favor against

Defendant, Dunmore School District, with an award of compensatory damages, interest, costs of suit, plus punitive damages, and such other relief as the Court deems necessary and appropriate.

### COUNT VII- 42 U.S.C. Section 1983 –
### FAILURE TO TRAIN AND SUPERVISE
### Plaintiffs, David Humphreys and Bridget Humphreys,
### as parents and Natural Guardians of Minor, JH v.
### Defendant Dunmore School District

158.    Plaintiff incorporates the previous paragraphs of this complaint as if fully set forth at length herein.

159.    Dunmore along with their teachers, administrators, officers, board members, agents, and employees of Defendant were state actors working for Defendant and received federal funding at all times relevant hereto.

160.    Dunmore along with their teachers, administrators, officers, board members, agents, and employees of Defendant acted under color of state law at all relevant times herein.

161.    Prior to and during the incident involving JH, Dunmore and other employees and officials of the School District knew about the blatant violations of the Handbook rules and regulations regarding the use of cellular devices within the school building and knew or should have known that in failing to enforce their own rules and regulations that an incident like the one involving JH that gives rise to this suit was likely to happen. Nonetheless, no appropriate, effective, or adequate steps

were taken to protect JH.

162.   During the period of the incident, Dunmore and other school employees and officials of the School District became aware that a video was being disseminated via AirDrop throughout the Dunmore Middle School and that students were in violation of the Handbook. However, no proper inquiries were made, and no corrective action was taken leading to further dissemination of the inappropriate and cruel video taken of JH without his consent.

163.   Dunmore and their teachers, administrators, officers, board members, agents and or employees knew or should have known that their response to any abuse, harassment, or discrimination allegations must comply with federal law.

164.   Dunmore failed to properly train and supervise their teachers, administrators, officers, agents, and/or employees as to mandated investigative requirements, which include:

a.   failing to take immediate and appropriate action to investigate or otherwise what occurred once informed of possible violations;

b.   failing to take prompt and effective steps to end the abuse, prevent its recurrence, and address its effects;

c.   failing to promptly report abuse and/or harassment of students including plaintiff JH, in accordance with their legal obligations; and

      d.   failing to take reasonable and necessary steps to protect JH and other minor students from abuses, violations and/or from suffering collateral harms and injuries as described above.

165.   Dunmore's failure to train their teachers, administrators, officers, board members, agents, and/or employees to deal with actual, apparent, or suspected criminal activity that is the direct, legal, and proximate cause of the harm suffered by JH.

166.   Dunmore's failure to provide proper and adequate training to their teachers, administrators, officers, agents, and/or employees constituted deliberate indifference to the presence of excessive risk of danger to the health, welfare, and safety of students at the Defendant School District, including Plaintiff JH.

WHEREFORE, Plaintiffs demand the entry of judgment in their favor against Defendants, Dunmore School District, and/or Timothy Hopkins, with an award of compensatory damages, interest, costs of suit, plus punitive damages, and such other relief as the Court deems necessary and appropriate.

### COUNT VIII
### VICARIOUS LIABILITY
**Plaintiffs, David Humphreys and Bridget Humphreys,**
**as parents and Natural Guardians of Minor, JH v.**
**Defendants Dunmore School District and Timothy Hopkins**

167.   The preceding paragraphs are incorporated herein by reference as if fully set forth here at length.

168.   Dunmore held Hopkins out to be a trusted administrator and principal, specifically having him place a statement in the Handbook of rules and regulations.

169.   At all times material and relevant hereto, Hopkins was acting as an agent, servant, and/or employee of Dunmore, in performing the duties and functions empowered to him as a principal for the School District.

170.   In the course of performing his duties and functions, Hopkins utilized the power, authority, and trust conferred upon him by virtue of his position as a principal.

171.   While acting within the scope of his employment with Dunmore, Hopkins failed to appropriately investigate actions of minor students which was in violation of the previously described statutory and Constitutional rights of Plaintiff, JH, a disabled minor and these actions and/or inactions were committed with the apparent authority of the Defendant Dunmore School District.

172.   By nature of the agency relationship between Dunmore, and by virtue of the frequent and consistent communication between defendants, Hopkins and other employees and/or administrators, Hopkins knew and had reason to know of the violations against JH.

173.   During the relevant time frame from March of 2023 through August 2023, including the 2022-2023 school year, in which Hopkins was principal had day-to-day control over the manner of the enforcement of both the Handbook regulations

and Dunmore's compliance with the statutory and Constitutional provisions alleged to have been violated here and how those objectives were accomplished within the Dunmore Middle School.

174.   In light of the aforementioned notice of violations against Plaintiff, JH, and in light of the complete lack of supervision over Dunmore's employees in enforcing sham policies in place to create a façade of protection for students like JH, it is not unexpected by Dunmore or Hopkins that such an incident could and did occur.

175.   The tortious conduct of Hopkins, as more fully set forth in this Complaint, was directly related to his employment with Dunmore as a principal.

176.   As such, Dunmore is vicariously liable for the tortious actions of Defendant Hopkins and/or any other employee.

WHEREFORE, Plaintiffs demand the entry of judgment in their favor against Defendants, Dunmore, and Timothy Hopkins, jointly and severally, with an award of compensatory damages, interest, costs of suit, plus punitive damages, and such other relief as the Court deems necessary and appropriate.

**COUNT IX**
**NEGLIGENCE**
**Plaintiffs, David Humphreys and Bridget Humphreys,**
**as parents and Natural Guardians of Minor, JH v.**
**Defendants Dunmore School District and Timothy Hopkins**

177.   The preceding paragraphs are incorporated herein by reference as if fully set forth here at length.

178.   At all times material and relevant hereto, Hopkins was acting in the scope and authority of his employment within Dunmore.

179.   Hopkins was required, as per the Department of Education, to maintain his professional certificates, and keep the same current and active.

180.   The Pennsylvania Department of Education, through its teachers' certification process ensures that teachers, administrators, and counselors are properly trained.

181.   At all times material and relevant hereto, the teachers, administrators, and counselors of Dunmore were also responsible for ensuring that each of its employees were adequately trained.

182.   Under Pennsylvania law, Section 504 and the ADA, the School District, by and through its agents, servants and employees breached the following duties herein included.

183.   The negligence, carelessness and recklessness of Dunmore constituted of the following:

a. Failure to properly supervise subordinates;

b. Failure to comply with federal, state and school district statutes, laws, regulations, policies, practices, and customs.

c. Failure to endeavor to maintain the health, safety, and welfare for the students;

d. Failure to arrange for the creation, revision and publication of the schools' regulations, policies, and procedures;

e. Failure to hold in-service training;

f. Failure to collaborate with teachers and supervisors to ensure education programs are delivered to each student consistent with the teachers' lesson plans as may be individualized education or program;

g. Failure to ensure that students state created right to a free and appropriate public education was not denied, absent due process of law;

h. Failure to ensure that all students with disabilities as well as those without are treated equally under applicable local, state, and federal policies, rules, regulations, and statutes;

i. Failure to ensure that JH's educational plan was adequate to meet his needs, and that his program was safe, appropriate, and properly

supervised, free from unreasonable and foreseeable risks of harm and provided a proper grouping of students;

j.  Failure to supervise the district staff, its program, plaintiff JH and other students;

k.  Failing to exercise reasonable care under all the existing circumstances.

l.  Failing to appropriately investigate claims of harassment, invasion of privacy and criminal acts committed upon a student, specifically a student with a disability, by other students under their dominion and control.

184.  The negligence, carelessness, and/or recklessness of Dunmore, by and through its agents and/or employees, as outlined above, was the proximate cause of the injury sustained by JH as outlined herein.

185.  As a result of the negligence, careless and/or recklessness of Dunmore, by and through its agents and/or employees, as described herein, and the individual Defendants, JH was filmed, without his consent in a pornographic manner; that video was disseminated throughout the Dunmore Middle School and Dunmore Jr/Sr. High School,  and Dunmore failed to immediately and appropriately protect the rights of JH based on his disability and Plaintiff suffered damages as a direct and proximate result.

186. By reason of the negligence, carelessness, and recklessness of Dunmore, by and through its agents and/or employees as described above JH has sustained serious and permanent personal injuries, as a result of which he has suffered and yet suffers and shall continue to suffer for an indefinite period of time into the future.

WHEREFORE, Plaintiffs demand the entry of judgment in their favor against Defendants, Dunmore School District and Timothy Hopkins, jointly and severally, with an award of compensatory damages, interest, costs of suit, plus punitive damages, and such other relief as the Court deems necessary and appropriate.

## COUNT X
## BREACH OF CONTRACT
**Plaintiffs, David Humphreys and Bridget Humphreys,
as parents and Natural Guardians of Minor, JH v.
Defendant Dunmore School District**

187. The preceding paragraphs are incorporated herein by reference as if fully set forth here at length.

188. Dunmore and Hopkins, either individually and/or jointly, by and through their agents, servants, administration, and/or employees, breached the Dunmore Middle School 2022-2023 Student Handbook when they wholly neglected to do and perform certain things which were expressly or by implication required to be done and performed.

189.   The Dunmore Middle School Student Handbook operates as a valid and binding contract by and between Dunmore and the students in Defendants' District, such as the minor-Plaintiff, JH. A true and correct copy of the 22-23 Student Handbook is attached hereto and marked as Exhibit "A".

190.   The material omissions and/or failures of the District Defendants, either individually and/or jointly, by and through their agents, servants, administration, and/or employees, consisted of, but are not limited to, the following:

a.   Failing to conduct an immediate formal investigation of the allegation that harassment, bullying and/or criminal activity had taken place with JH as the victim;

b.   Failing to inform the minor-Plaintiff, JH through his parents and natural guardians, of his rights and of the complaint process;

c.   Failing to prepare a written report summarizing the investigation and recommending disposition of the complaint;

d.   Failing to take prompt corrective action to ensure that continued harm to Plaintiff JH would not occur;

e.   Failing to abide by the JH's, Educational Plan;

f.   Failing to abide by the JH's, Service Agreement in violation of the Rehabilitation Act of 1973 (20 U.S.C.A, § 794):

g.   Failing to protect JH, as a victim of violations of both his rights and

the Student Handbook;

h.   Failing to expel, remove or transfer minor Defendants immediately for acts constituting expellable offenses under the Student Handbook;

i.   Failing to act in accordance with the Public-School Code as identified in the Student Handbook;

j.   Failing to act in accordance with Title IX as identified in the Student Handbook.

191. The Dunmore and Hopkins, either individually and/or jointly, by and through their agents, servants, administration, and/or employees, have refused, and continue to so refuse, to cure the aforementioned breaches, despite Plaintiffs repeated demands.

192.   As the direct and proximate result of the above breaches, the Plaintiff has been damaged in an amount to be determined at trial.

WHEREFORE, Plaintiffs demand the entry of judgment in their favor against Defendants, Dunmore School District and Timothy Hopkins, jointly and severally, with an award of compensatory damages, interest, costs of suit, plus punitive damages, and such other relief as the Court deems necessary and appropriate.

## COUNT XI
## NEGLIGENT ENTRUSTMENT
**Plaintiffs, David Humphreys and Bridget Humphreys,
as parents and Natural Guardians of Minor, JH v.
Chris Mills, Sandi Mills, Greg Hunt, Lindsay Hunt, Frank Sottile,
Jolane Sottile, Greg Wolff, Nicole Wolff, Frank Cantafio and Michelle
Cantafio, in their individual capacities**

193.    Plaintiff incorporates the previous paragraphs of this complaint as if fully set forth at length herein.

194.    In today's day and age, where almost daily, we see individuals, specifically minors, attempting to gain fame via the internet and social media applications through dangerous or criminal acts, it is not unreasonable to think that minors who are provided cellular telephones could attempt to utilize the camera and/or unrestricted access to social media applications and phone capabilities, including but not limited to Airdrop, text messaging and Snapchat, could potentially be utilized by minors to cause harm to others.

195.    The stories of cellular telephones being utilized in these types of situations are glorified by social media, the news media, and other media outlets.

196.    It is almost impossible to be immune to the fact that cellular phone usage by minors is potentially dangerous and harmful to not only the minor child entrusted with the phone but to those who can be recorded via photograph or video, or what the child can be exposed to when allowed by the owner of the phone to have unrestricted access to the internet and communication with others.

197.   Daily we see the harm that can be caused by minors and their utilization of what was once a way to maintain contact with family members or to let others know you are safe have turned into handheld computers that give you access around the world all while sitting in a classroom or a lavatory.

198.   Cellular telephone technology, as suggested above, gives the user access to disseminate data, video, photographs, and information to hundreds of people in just the simple touch of a button in the palm of your hand.

199.   With that power comes great access to act negligently, carelessly, and/or recklessly causing harm to others.

200.   Specifically in this case cellular telephones provided to the minor Defendants, allowed them to act negligently, carelessly,  and recklessly causing harm to Plaintiff, JH.

201.   Parents must realize that minors often do not realize the consequences of their actions and when armed with a handheld computer, the ability to act negligently, carelessly, and/or recklessly and cause harm to others is vast with no ability to retract the damage that can be done.

202.   Chris and Sandi Mills are the parents and natural guardians of CM and were the owners and in dominion and control of the cellular telephone and the cellular service plan used by CM to disseminate the video in question to other students.

203.   That cellular telephone was utilized by CM to commit negligent, careless, and reckless acts against Plaintiff, JH causing him harm and damages.

204.   Greg and Lindsay Hunt are the parents and natural guardians of MH and were the owners and in dominion and control of the cellular telephone and the cellular service plan used by MH to disseminate the video in question to other students, specifically through the application Snapchat.

205.   That cellular telephone was utilized by MH to commit negligent, careless and reckless acts against Plaintiff, JH, causing him harm and damages.

206.   Frank and Jolane Sottile are the parents and natural guardians of LS and were the owners and in dominion and control of the cellular telephone and the cellular service plan used by LS to create the video of Plaintiff, JH and to disseminate the video in question to other students.

207.   LS utilized that cellular telephone to commit negligent, careless, and reckless acts against Plaintiff, JH, causing him harm and damages.

208.    Greg and Nicole Wolff are the parents and natural guardians of JW and were the owners and in dominion and control of the cellular telephone and the cellular service plan used by JW to disseminate the video in question to other students.

209.   JS utilized that cellular telephone to commit negligent, careless, and reckless acts against Plaintiff, JH, causing him harm and damages.

210.   Frank and Michelle Cantafio are the parents and natural guardians of CC and were the owners and in dominion and control of the cellular telephone and the cellular service plan used by CC to receive and disseminate the video in question to other students.

211.   CC utilized that cellular telephone to commit negligent, careless, and reckless acts against Plaintiff, JH, causing him harm and damages.

212.   All of the parents listed in this Count are being sued in their individual capacity with respect to the negligent entrustment claim.

213.   The Parent Defendants knew or should have known that their children could likely use their cellular phones in a manner that may unreasonably harm others, specifically in this case Plaintiff JH.

214.   Parent Defendants were negligent in entrusting their minor children with cellular telephones as follows:

    a.  Failing to monitor their child's cellular telephone usage as to the use of applications and recording of others;

    b.  Failing to utilize parental controls to ensure that their minor children were not engaged in negligent, careless, or reckless activities utilizing the cellular telephones;

    c.  Providing unrestricted sharing and access, either via cell phone signal or internet access, to their minor children's cellular telephones

during school hours in violation of Dunmore's Student Handbook; and

d.  Failing to block applications that allow children to share or engage in publicly sharing or receiving pornographic material.

215.   Defendants Parents' negligent entrustment of the cellular telephones was a direct and proximate cause of Plaintiff, JH's harm, and damages.

WHEREFORE, Plaintiffs demand the entry of judgment in their favor against Defendants, Chris Mills, Sandi Mills, Greg Hunt, Lindsay Hunt, Frank Sottile, Jolane Sottile, Greg Wolff, Nicole Wolff, Frank Cantafio and Michelle Cantafio, with an award of compensatory damages, interest, costs of suit, plus punitive damages, and such other relief as the Court deems necessary and appropriate.

## COUNT XII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
**Plaintiffs, David Humphreys and Bridget Humphreys,
as parents and Natural Guardians of Minor, JH v.
Timothy Hopkins, Chris Mills and Sandi Mills, as parents and natural
guardians of CM; Greg Hunt and Lindsay Hunt, as parents and natural
guardians of MH; Frank Sottile and Jolane Sottile as parents and natural
guardians of LS; Greg Wolff and Nicole Wolff and parents and natural
guardians of JW and; Frank Cantafio and Michelle Cantafio, as parents and
natural guardians of CC**

216.   The preceding paragraphs are incorporated herein by reference as if fully set forth here at length.

217.   The conduct of Defendants CM, MH, LS, JW, and CC, as set forth

above, including the production and dissemination of the video in question, constituted outrageous conduct utterly intolerable in a civilized society, and that conduct led to severe emotional distress for the Plaintiff.

218. Defendant Hopkins, in failing to appropriately investigate the allegations of the video in question, intentionally, recklessly, and/or deliberately inflicted extreme emotional distress upon Plaintiff by his failure to take action with respect to stopping the dissemination of the video and removing those responsible from JH's education setting.

219. Named Defendants are therefore liable to Plaintiff for intentional infliction of emotional distress.

WHEREFORE, the Plaintiffs demand judgment be entered against, Timothy Hopkins, Chris Mills and Sandi Mills, as parents and natural guardians of CM; Greg Hunt and Lindsay Hunt, as parents and natural guardians of MH; Frank Sottile and Jolane Sottile as parents and natural guardians of LS; Greg Wolff and Nicole Wolff and parents and natural guardians of JW and; Frank Cantafio and Michelle Cantafio, as parents and natural guardians of CC, jointly and severally, with an award of compensatory damages, interest, costs of suit, plus punitive damages, and such other relief as the Court deems necessary and appropriate.

**COUNT XIII**
**PUNITIVE DAMAGES**
**Plaintiffs, David Humphreys and Bridget Humphreys,**
**as parents and Natural Guardians of Minor, JH v.**
**All Defendants**

220.  The preceding paragraphs are incorporated herein by reference as if fully set forth here at length.

221.  The aforementioned conduct of the Defendants was outrageous and/or done willfully, wantonly, and/or with reckless indifference to the rights of JH.

222.  Defendants Dunmore and Hopkins knew their acts to conceal the known dissemination of an unlawfully obtained pornographic video by minor Defendants and to not fully investigate, remove the students involved or take action to protect JH from further harm, created an unreasonable risk that incidents similar to this would continue to occur.

223.  Nevertheless, Dunmore and Hopkins continuous and systematic conduct, was intentional and malicious, and thereby exhibited reckless indifference to the rights, safety and well-being of students who receive special education, including JH.

224.  Minor Defendant's actions were outrageous and/or done willfully, wantonly, and/or with reckless indifference to the harm it would cause to JH.

225.   Defendants, all of them in their own right, and with full knowledge of the risk of harm to JH, outrageously, maliciously, wantonly, and willfully caused the harm and damages to JH.

226.   Additionally, Defendants Dunmore and Hopkins, upon knowledge of the existence of the video, deliberately failed to report said abuse as required under Pennsylvania's Child Protective Services Law, 23 Pa.C.S.A. Section 6302, *et. seq.,* in conscious disregard of the aforementioned risk of harm to their students, including JH.

227.   As a direct and proximate result of the reckless, outrageous, wanton, willful and malicious conduct of Defendants, JH has incurred damages.

228.   As a direct and proximate result of Defendants' reckless, outrageous, wanton, willful and malicious conduct, JH has suffered a loss of life's pleasures.

229.   The conduct of the Defendants was extreme and outrageous conduct, which conduct was committed in willful, wanton, reckless, and in total disregard to the rights, safety and well-being of JH entitling Plaintiffs to an award of punitive damages, and claim is made, therefore.

WHEREFORE, Plaintiffs demand the entry of judgment in their favor against all Defendants, jointly and severally, with an award of compensatory damages, interest, costs of suit, plus punitive damages, and such other relief as the Court deems necessary and appropriate.

## COUNT XIV
## DEMAND FOR ATTORNEY'S FEES

230.   The preceding paragraphs are incorporated herein by reference as if fully set forth here at length.

231.   Statutes raised in Counts IV and V of this Complaint contain fee shifting provisions.

232.   Given the likelihood of success of these claims, Plaintiffs seek full reimbursement for fees and costs associated with this present litigation under Section 504 in the ADA.

233.   Plaintiffs reserve the right to amend and submit their invoices regarding attorneys' fees and costs associated with litigation relating to this matter through a subsequent fee petition, if necessary.

WHEREFORE, Plaintiffs respectfully request this Honorable Court award judgment to the Plaintiffs respectfully request this Honorable Court award judgment to the Plaintiffs and against defendant, Dunmore School District, for reasonable attorney's fees and costs under Section 504 and ADA.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs seek monetary damages and reasonable attorney's fees and costs under Section 504, ADA and Pennsylvania law, inter alia, from the Defendants, including the following:

1.     Assume jurisdiction over this action;

2.     Enter Judgment for an award of damages pertaining to educational and emotional harm associated with the Defendants' conduct as described in the Complaint against the Defendants

3.     Order appropriate monetary relief, and declare the Defendants' to be in violation of Section 504, the ADA, Section 1988 and other Federal and Pennsylvania laws;

4.     Order the Defendants to compensate Plaintiffs for the reasonable attorney's fees and related costs associated with the present litigation, pursuant to Section 504, ADA, Section 1988 and other Federal Laws.

5.     Award compensatory damages to Plaintiff Student and Plaintiffs for Student's injuries, pain, and suffering, both past, present, and future as well as punitive damages;

6.     Order to change the policy, practice and customs regarding disability discrimination described herein;

7.     Grant such other relief as this Court deems proper.

## **JURY TRIAL DEMAND**

Plaintiff demands a jury trial, pursuant to the Seventh Amendment to the Constitution of the United States, as to all claims for damages.

Respectfully submitted:

**THE MATTIOLI LAW FIRM**

By:    ***/s/ Jason J. Mattioli***
         Jason J. Mattioli, Esquire
         Jaylaw344@yahoo.com
         Pa. ID: 88766

         ***/s/ Michael J. Ossont***
         Michael J. Ossont, Esquire
         Mjossont.mlf@gmail.com
         Pa. I.D.: 310437
         425 Biden Street, Ste 300
         Scranton, PA 18503
         *Attorneys for the Plaintiffs*