## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JH, a minor, by and through his parents and natural guardians, DAVID and BRIDGET HUMPHREYS, **Plaintiffs** | : : : : | No. 3:24cv1154 (Judge Munley) |
| v. | : : | |
| DUNMORE SCHOOL DISTRICT; TIMOTHY HOPKINS, in his official and individual capacities; CHRIS and SANDI MILLS, individually and as parents and natural guardians of CM, a minor; GREG and LINDSAY HUNT, individually and as parents and natural guardians of MH, a minor; FRANK and JOLANE SOTTILE, individually and as parents and natural guardians of LS, a minor; GREG and NICOLE WOLFF, individually and as parents and natural guardians of JW, a minor; and ANTHONY and MICHELLE CANTAFIO, individually and as parents and natural guardians of CC, a minor, **Defendants** | : : : : : : : : : : : : : : : : : : : : : : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### <u>MEMORANDUM</u>

Before the court are five (5) motions to dismiss filed by Defendants Timothy Hopkins and the Dunmore School District, Greg and Lindsay Hunt, Frank and Jolane Sottile, Greg and Nicole Wolff, and Anthony and Michelle Cantafio. This memorandum addresses all of the pending motions.

**Background**

This action arises out of events at Dunmore Junior-Senior High School in Dunmore, Pennsylvania. At all times relevant to this action, JH was a male thirteen-year-old student enrolled at the school. (Doc. 40, Sec. Am. Compl., ¶ 21).[1] Providers diagnosed JH with autism spectrum disorder during the 2015-2016 school year. Id. ¶ 23.

JH is thus eligible for special education services. Id. ¶ 22. He utilizes an autistic support classroom for behavioral check-ins, help with organization, and itinerant support while he participates in a general education setting. Id. ¶¶ 24–25. The second amended complaint alleges that JH struggles with appropriate social skills. Id. ¶ 26. Specifically, plaintiffs aver that JH was working with his autism support teacher to address certain behaviors, including masturbation. Id. ¶¶ 33–34. On March 3, 2023, another student at the school, LS, used a cellphone to record JH masturbating inside a bathroom stall. Id. ¶¶ 32–33.

LS saved the recording of JH to his phone. Id. ¶ 35. LS then used Apple AirDrop to share the video to anyone with an iPhone within a certain range. Id. ¶¶ 40–43. Upon plaintiffs' information and belief, the recording of JH then spread

---

[1] These brief background facts are derived from plaintiff's complaint and the exhibits attached thereto. At this stage of the proceedings, the court must accept all factual allegations in the amended complaint as true. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). The court makes no determination, however, as to the ultimate veracity of these assertions.

throughout the Dunmore school community and to students at other schools.[2] Id. ¶ 45.

On March 31, 2023, a teacher approached JH's autism support teacher to report that she overheard students discussing that they possessed the recording of JH. Id. ¶ 48.  The teachers informed Defendant Timothy Hopkins, the school principal, as well as the school resource officer, SRO Springer. Id. ¶ 50.  JH's teacher also informed his parents, David and Bridget Humphreys ('the Humphreys"). Id. ¶ 51.

The Humphreys then met with Defendant Hopkins. Id. ¶ 52.  Hopkins advised the Humphreys about the school's investigation into the incident. Id.  Per the second amended complaint, Hopkins stated that the school tracked down the student who would have been in the boys' bathroom at the same time JH was there. Id. ¶¶ 52–53.  According to the Humphreys, Hopkins also stated that the school searched the student's cellphone, but they did not locate the video. Id.  Per the second amended complaint, Hopkins essentially told JH's parents that nothing more could be done. Id. ¶ 54.

The Humphreys did not accept this outcome. Id. ¶¶ 57–58.  They contacted SRO Springer, who conducted a further investigation into potential criminal acts

---

[2] For example, CM allegedly shared the recording of JH in a Snapchat group with nineteen (19) other individuals. (Doc. 40, Second Am. Compl. ¶ 79).

at the school. Id. ¶¶ 58–59.  On April 4, 2023, SRO Springer advised the

Humphreys that the recording of JH had been located on four students' phones,

CM, MH, LS, and JW. Id. ¶¶ 60, 62.  The Humphreys pursue claims in this action

against those students and their parents, Defendants Chris and Sandi Mills, Greg

and Lindsay Hunt, Frank and Jolane Sottile, and Greg and Nicole Wolff.  Id ¶¶

63–70.  Law enforcement later discovered that LS also sent the video to another

student, CC.  Id. ¶¶ 72.  Accordingly, the Humphreys likewise pursue claims

against CC and that student's parents, Anthony and Michelle Cantafio. Id. ¶¶ 73–

75.

On August 23, 2023, authorities filed juvenile delinquency petitions against

CM, MH, LS, and JW in the Lackawanna County Court of Common Pleas. Id. ¶

79.  Yet, per the Humphreys, all students involved in recording JH or sharing of

the video remained enrolled in the Dunmore School District or have been

reenrolled since the incident. Id. ¶ 80.

The Humphreys additionally allege that their family has endured further

incidents related to this recording.  Specifically, on January 4, 2024, David

Humphreys overheard a group of students yelling the phrase "beat it" toward JH

during a school pick-up. Id. ¶ 90.  Several teachers and staff members were

outside the school when this incident occurred. Id. ¶ 91.  The Humphreys were

advised, however, that no students were disciplined for this incident, meaning

4

these school employees heard the comment, but the school did not take any action. Id.

Defendant Dunmore School District maintains policies prohibiting students from having their cellphones while in school. Id. ¶ 36. Students are required to place all electronic devices in their locker or in classroom device holders. Id. ¶ 37. Further, students are prohibited from taking photographs or videos of other students without their consent. Id. ¶ 38. The Humphreys contend that these policies went unenforced even after a similar incident and that the failure to enforce such policies caused JH harm. Id. ¶¶ 37, 39, 85–88

Based on the above allegations, the second amended complaint asserts multiple claims against the defendants. Several claims are directed at Defendants Hopkins and the Dunmore School District (collectively "school defendants") alleging violations of federal and state law. Those claims are as follows:

- Count I – violation of 42 U.S.C. § 1983 ("Section 1983") and the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400, *et seq* ("IDEA"), id. ¶¶ 93–118;

- Count II – violation of the Equal Protection Clause of the Fourteenth Amendment, id. ¶¶ 119–24;

- Count III - violation of the IDEA, id. ¶¶ 125–27;

- Count IV – violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12131–12134 ("ADA"), id. ¶¶ 128–47 (asserted against Defendant Dunmore School District only);

5

- Count V – violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504"), id. ¶¶ 148–54 (asserted against Defendant Dunmore School District only);

- Count VI – violation of Title IX of Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.* ("Title IX"), id. ¶¶ 148–72;

- Count VII – failure to train and supervise in violation of Section 1983, id. ¶¶ 173–81 (asserted against Defendant Dunmore School District only);

- Count VIII – vicarious liability, id. ¶¶ 181–91;

- Count IX – negligence under state law, id. ¶¶ 192–201; and

- Count X – breach of contract under state law (asserted against Defendant Dunmore School District only), id. ¶¶ 202–07.

The Humphreys also contend that Defendant Hopkins committed the tort of intentional infliction of emotional distress in Count XII. Id. ¶¶ 231–35. Furthermore, they seek attorneys' fees from the school defendants in Count XIV in the event that they prevail on their ADA and Rehabilitation Act claims. Id. ¶¶ 246–49.

In addition, the Humphreys bring claims under state law against the students and their parents. Count XI asserts claims for negligent entrustment against the parents. Id. ¶¶ 208–31. Count XII advances claims for intentional infliction of emotional distress against the students. Id. ¶¶ 231–35. The second

amended complaint further requests punitive damages from all defendants in Count XIII. Id. ¶¶ 236–45.

The school defendants and some of the parent defendants responded to the Humphreys' second amended complaint by filing five (5) motions to dismiss.[3] In their motion and brief in support, the school defendants argue that the federal claims in Counts I to V must be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). (Docs. 51, 59).  As discussed below, these claims all reference denial of a free appropriate public education. The school defendants assert that these claims were not exhausted at an administrative level as required by the IDEA.  Pursuant to Rule 12(b)(6), the school defendants also assert that the Humphreys' second amended complaint fails to state any plausible claim.  In four (4) separate motions, the responding parent defendants also move to dismiss the state law claims asserted against them under Rule 12(b)(6). (Docs. 45, 50, 53, 57).  These motions are ripe for disposition.

---

[3] On July 19, 2024, the Humphreys filed return forms regarding service of the original complaint upon Defendants Chris and Sandi Mills.  To date, the Mills have not answered, filed a motion, or otherwise responded to the second amended complaint or any of the plaintiffs' earlier pleadings.

**Jurisdiction**

As the case is brought pursuant to Section 1983, the IDEA, the ADA, the

Rehabilitation Act, and Title IX, the court has federal question jurisdiction. See 28

U.S.C. § 1331.  The court has supplemental jurisdiction over plaintiff's state law

claims pursuant to 28 U.S.C. § 1367(a).

**Standard of Review**

**1. Rule 12(b)(1)**

The school defendants move to dismiss the federal claims in Counts I to V

pursuant to Rule 12(b)(1) for failure to exhaust claims at an administrative level.

Rule 12(b)(1) authorizes a court to dismiss an action for lack of subject matter

jurisdiction. FED. R. CIV. P. 12(b)(1).  Motions brought under Rule 12(b)(1) may

present either a facial or factual challenge to the court's subject matter

jurisdiction. Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016).  In short, "a

facial attack contests the sufficiency of the pleadings, whereas a factual attack

concerns the actual failure of a plaintiff's claims to comport factually with the

jurisdictional prerequisites." Const. Party of Pennsylvania v. Aichele, 757 F.3d

347, 358 (3d Cir. 2014) (cleaned up).  As discussed below, the school

defendants' motion lodges a facial attack on the court's subject matter

jurisdiction, referring only to the allegations in the Humphreys' second amended

complaint.  With a facial attack, a court may consider only the facts of the

8

complaint, viewing them in a light most favorable to the plaintiff. <u>See</u> <u>Long v. Se.</u>
<u>Pennsylvania Transportation Auth.</u>, 903 F.3d 312, 320 (3d Cir. 2018) (citation
omitted).

### 2. Rule 12(b)(6)

The school defendants and the responding parent defendants also filed
motions to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon
which relief can be granted.  The court tests the sufficiency of the complaint's
allegations when considering a Rule 12(b)(6) motion.

To survive a motion to dismiss, "a complaint must provide 'a short and plain
statement of the claim showing that the pleader is entitled to relief.' " <u>Doe v.</u>
<u>Princeton Univ.</u>, 30 F.4th 335, 341–42 (3d Cir. 2022) (quoting FED. R. CIV. P.
8(a)(2)).  This means a complaint must contain sufficient factual matter, accepted
as true, to state a claim for relief that is plausible on its face. <u>Ashcroft v. Iqbal</u>,
556 U.S. 662, 678 (2009) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570
(2007)).  A claim has facial plausibility when factual content is pled which allows
the court to draw the reasonable inference that the defendant is liable for the
misconduct alleged. <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 570).  "Threadbare recitals
of the elements of a cause of action, supported by mere conclusory statements,
do not suffice." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 555).

The court evaluates motions to dismiss using a three-step process. The first step involves identifying the elements of each claim. <u>Oldham v. Pennsylvania State Univ.</u>, 138 F.4th 731, 743 (3d Cir. 2025) (citation omitted). The second step involves reviewing the operative pleading and disregarding any formulaic recitation of the elements of a claim or other legal conclusion, as well as allegations that are so threadbare or speculative that they fail to cross the line between the conclusory and factual. <u>See</u> <u>Lutz v. Portfolio Recovery Assocs.</u>, LLC, 49 F.4th 323, 328 (3d Cir. 2022) (citations and quotation marks omitted).

The third step evaluates the plausibility of the remaining allegations. <u>Id.</u> In evaluating plausibility of the plaintiffs' allegations, the court accepts all factual allegations as true, construes the complaint in the light most favorable to the plaintiffs, and draws all reasonable inferences in the plaintiffs' favor. <u>Id.</u> (citations omitted).

**Analysis**

For ease of disposition, this memorandum will first address the Rule 12(b)(1) and Rule 12(b)(6) motions filed by Defendants Hopkins and the Dunmore School District in Section 1. (Doc. 51). The court will then address the motions to dismiss filed by the responding parent defendants under Rule 12(b)(6) in Section 2. (Docs. 45, 50, 53, 57).

1. **Defendants Hopkins and the Dunmore School District's Motions to Dismiss**

In Counts I to V of the second amended complaint, the Humphreys assert claims against Defendants Hopkins and Dunmore School District for alleged violations of the Fourteenth Amendment, Section 1983, the IDEA, the ADA, and Section 504.  Relative to these claims, the Humphreys contend that the school defendants failed to provide JH with a free appropriate public education ("FAPE").  (Doc. 40, Second Am. Compl., ¶¶ 94, 120, 126, 142, 148, 153).  The school defendants argue that the court lacks subject matter jurisdiction over such claims, or in the alternative, that they fail to state a claim. (Docs. 51, 59).  The court will begin with a discussion of the IDEA, ADA, and Section 504 before turning to the school defendants' substantive arguments in support of dismissal.

   a. **The Humphreys' IDEA, ADA, and Section 504 Claims**

Counts I and III of the second amended complaint allege that the school defendants violated the IDEA.  The IDEA offers federal funds to states in exchange for a commitment to furnish the core guarantee of a free appropriate public education or a FAPE to all children with certain physical or intellectual disabilities. See A.J.T. by & through A.T. v. Osseo Area Sch., Indep. Sch. Dist. No. 279, 605 U.S. 335, 145 S. Ct. 1647, 1652 (2025) (quoting Fry v. Napoleon

Cmty Sch., 580 U.S. 154, 170 (2017); 20 U.S.C. § 1412(a)(1)(A)).  "[O]nce a State accepts the IDEA's financial assistance, it must provide 'special education and related services,' including 'instruction' tailored to meet a child's 'unique needs' and sufficient 'support services' to permit the child to benefit from that instruction." Id. (quoting Fry, 580 U.S. at 158; 20 U.S.C. § 1401(9), (26), (29)) (some quotation marks omitted).  Specifically, school districts must: 1) timely identify students who need special education services and 2) provide those students with a FAPE. B. S. M. v. Upper Darby Sch. Dist., 103 F.4th 956, 963 (3d Cir. 2024) (citing D.K v. Abington Sch. Dist., 696 F.3d 233, 244 (3d Cir. 2012)).

In addition to the IDEA, other federal laws afford " 'diverse' (and occasionally overlapping) protections for children with disabilities in public schools." Id. (citing Fry, 580 U.S. at 170–71).  Title II of the ADA and Section 504 of the Rehabilitation Act "prohibit discrimination on the basis of disability in a wide variety of contexts[,]" including in public schools. Id. (citing Fry, 580 U.S. at 159). In this matter, Count IV of the Humphreys' second amended complaint contends that Defendant Dunmore School District violated the ADA.  Count V asserts that the district violated Section 504.

Title II of the ADA and Section 504 "both…authorize individuals to seek redress for violations of their substantive guarantees by bringing suits for injunctive relief or money damages." Fry, 580 U.S. at 160 (citing 42 U.S.C. §

12133; 29 U.S.C. § 794a(a)(2)).  The IDEA does not provide for recovery of compensatory damages.  See Luna Perez v. Sturgis Pub. Sch., 598 U.S. 142, 147 (2023); Chambers ex rel. Chambers v. Sch. Dist. of Philadelphia Bd. of Educ., 587 F.3d 176, 185–86 (3d Cir. 2009).  Rather, under the IDEA, "a district court is authorized to grant such relief as the court determines is appropriate, including attorneys' fees, reimbursement for a private educational placement, and compensatory education." G.L. v. Ligonier Valley Sch. Dist. Auth., 802 F.3d 601, 608 (3d Cir. 2015) (cleaned up).

With respect to their IDEA claims, the Humphreys are not seeking any prospective relief, such as private educational placement, additional school supports, or changes to JH's individualized education plan. (Doc. 40, Second Am. Compl. ¶ 118).  They are not requesting compensatory education or reimbursement of expenses the school should have allegedly paid in the first instance. Id.  Rather, plaintiffs seek compensatory damages, interest, costs of suit, and punitive damages for the alleged IDEA violations as well "and such other relief as the [c]ourt deems necessary and appropriate." Id. at pp. 24, 26 (ad damnum clauses).  The Humphreys thus seek some forms of relief that the IDEA does not provide, i.e., compensatory damages.

With respect to their ADA and Section 504 claims, the Humphreys are also seeking "an award of compensatory damages, interest, costs of suit, plus

13

punitive damages, and such other relief as the Court deems necessary and appropriate." Id. at pp. 31–32 (*ad damnum* clauses).  In Count XIV of the second amended complaint, the Humphreys further state a demand for attorneys' fees "[g]iven their likelihood of success" with their ADA and Section 504 claims.[4] Id. ¶¶ 247–48.

Returning to the issue before the court regarding subject matter jurisdiction, the IDEA "sets forth a number of administrative procedures for children, their parents, teachers, and school districts to follow when disputes arise." Luna Perez, 598 U.S. at 144.  Plaintiffs must exhaust the administrative process set forth in a "detailed statutory scheme" before resorting to a civil action in federal court. See T.R. v. Sch. Dist. of Philadelphia, 4 F.4th 179, 184–85 (3d Cir. 2021) (citations omitted); see also 20 U.S.C. § 1415(b)(6)–(7), (e), (f), (g), (i)(2). The language of the IDEA makes clear that Congress intended plaintiffs to complete the administrative process before filing in federal court. See D.E., 765 F.3d at 274–75 (discussing Komninos v. Upper Saddle River Bd. of Educ., 13 F.3d 775, 778 (3d Cir. 1994)).  Thus, "courts must enforce the rules of exhaustion." Id.

---

[4] The Humphreys do not expressly seek attorneys' fees and costs regarding their IDEA claims in Count I and Count III.  Nonetheless, the award of attorney fees and costs are remedies which are also available under the IDEA. Le Pape v. Lower Merion Sch. Dist., 103 F.4th 966, 980 n.11 (3d Cir. 2024) (citing Batchelor v. Rose Tree Media Sch. Dist., 759 F.3d 266, 276-77 (3d Cir. 2014)).

In this case, the plaintiffs' allegations may only be read for the proposition that they did not pursue any claims at an administrative level, including their claims under the IDEA, the ADA, and Section 504. (See Doc. 40 ¶ 117).  To the extent that the Humphreys assert claims pursuant to the IDEA, those claims require administrative exhaustion.[5]  Accordingly, the court lacks subject matter jurisdiction over the IDEA claims in Count I and Count III.  See T.R. 4 F.4th at 185.  The school defendants' Rule 12(b)(1) motion will be granted in this respect. The Humphreys' IDEA claims will be dismissed with prejudice.

As for the Humphreys ADA and Section 504 claims against Defendant Dunmore School District, "[t]he reach of IDEA's exhaustion requirement extends beyond claims brought under the IDEA." Id. (citation omitted).  Specifically, a separate provision in the IDEA provides:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter,

---

[5] Despite an administrative exhaustion requirement, the Third Circuit Court of Appeals has indicated that a failure to exhaust "may be excused 'where: (1) exhaustion would be futile or inadequate; (2) the issue presented is purely a legal question; (3) the administrative agency cannot grant relief; [or] (4) exhaustion would cause severe or irreparable harm.' " T.R., 4 F.4th at 185 (quoting D.E. v. Cent. Dauphin Sch. Dist., 765 F.3d 260, 275 (3d Cir. 2014)).  The Humphreys reference the futility exception in their second amended complaint. (Doc. 40 ¶ 117). Despite this averment, however, the plaintiffs do not argue that administrative exhaustion would be futile in their brief in opposition. (See Doc. 64 at 17–19).  Accordingly, the court will not consider any exceptions to exhaustion in this memorandum.

the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(*l*).

As construed, Section 1415(*l*) requires that a plaintiff exhaust the IDEA's procedures before filing an action under the ADA or Section 504, "when (but only when) her suit 'seek[s] relief that is also available' under the IDEA." Fry, 580 U.S. at 165. As further construed, the word "remedies" and the word "relief" in Section 1415(*l*) are synonymous. Luna Perez, 598 U.S. at 148. Thus, Section 1415(*l*) does not require administrative exhaustion of non-IDEA claims which seek remedies that the IDEA does not provide, such as "backward looking relief in the form of compensatory damages[,]" even if it is based upon a past denial of FAPE.[6] See id. at 145–48.

In this matter, the Humphreys seek compensatory damages for violation of the ADA and Section 504. (Doc. 40, Second Am. Compl. at pp. 31-32, *ad damnum* clauses). Accordingly, based on Luna Perez, that relief is not subject to

---

[6] Under Fry, a component of the analysis into whether a non-IDEA claim is subject to exhaustion under Section 1415(*l*) is whether the gravamen of the plaintiff's complaint seeks relief for a denial of FAPE. See 580 U.S. at 169–74. In light of the request for compensatory damages, the court need not conduct an extended gravamen analysis. A review of the complaint reflects that the Humphreys' ADA and Section 504 claims concern the denial of a FAPE. If plaintiffs intended to assert other standalone theories of disability discrimination, those theories are obscured by the form and style of the pleading.

administrative exhaustion. Id.  The school defendants' Rule 12(b)(1) motion will be denied as it relates to the plaintiffs' ADA and Section 504 claims.

As for Count XIV which seeks relief in the form of attorneys' fees for alleged violations of the ADA and Section 504, that remedy is a form of relief available under the IDEA. Le Pape, 103 F.4th at 980 n.11 (citation omitted). Section 1415(l) operates to preclude this relief unless and until the Humphreys exhaust their administrative remedies. See Luna Perez, 588 U.S. at 150 ("Under our view, for example, a plaintiff who files an ADA action seeking both damages and the sort of equitable relief IDEA provides may find his request for equitable relief barred or deferred if he has yet to exhaust § 1415(f) and (g)"). Thus, Count XIV will be dismissed pursuant to Rule 12(b)(1).

Before turning to any other causes of action, the court will consider the Rule 12(b)(6) arguments regarding the ADA and Section 504 claims, which are asserted against Defendant Dunmore School District only.  Specifically, the district challenges the allegations supporting these disability discrimination claims as conclusory.  (Doc. 59, Br. in Supp. at 17–18).

"[T]o state a claim under Title II of the ADA, plaintiffs must demonstrate that: (1) they are qualified individuals; (2) with a disability; and (3) they were excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or were subjected to discrimination by any such entity;

(4) by reason of their disability." Durham v. Kelley, 82 F.4th 217, 225 (3d Cir. 2023) (citing Haberle v. Troxell, 885 F.3d 170, 178 (3d Cir. 2018)).  The same standard governs claims asserted pursuant to Section 504 of the Rehabilitation Act.[7]  See id.; Chambers ex rel. Chambers, 587 F.3d at 189 (citation omitted).

In a case such as this, "[w]here compensatory damages are sought, a plaintiff must also show intentional discrimination under a deliberate indifference standard." Id. (citations omitted). "To satisfy the deliberate indifference standard, a plaintiff 'must present evidence that shows both: (1) knowledge that a federally protected right is substantially likely to be violated ..., and (2) failure to act despite that knowledge.' " D.E., 765 F.3d at 269 (quoting S.H. v. Lower Merion Sch. Dist., 729 F.3d 248, 261 (3d Cir. 2013)).

There are no disputes regarding JH's disability or his qualifications to participate in the district's programs.  Defendants Hopkins and the Dunmore School District assert, however, that the plaintiffs' ADA and Section 504 claims fall short of alleging the denial of a service. (Doc. 59, Br. in Supp. at 17–18). School defendants also argue that plaintiffs do not allege that the denial was due to his disability.  Id.  After review of the second amended complaint, however, plaintiffs have asserted enough facts to meet the above elements for both the

---

[7] To recover for violation of Section 504, the Humphreys must also prove that the defendant was a federal funding recipient. Chambers ex rel. Chambers, 587 F.3d at 189, n. 20 (citing 29 U.S.C. § 794(a)).  This is not at issue in this case.

ADA and Section 504 claims based on the alleged denial of a FAPE.  (Doc. 40, Second Am. Compl. ¶¶ 89–92, 132–133, 135–141).  The school defendants' motions to dismiss will thus be denied as to the ADA and Section 504 claims.

### b. The Humphreys' Title IX Claims

In addition to disability discrimination claims, the second amended complaint also contends that JH has experienced sex-based discrimination. Count VI asserts a Title IX claim against Defendants Hopkins and the Dunmore School District.  Under Title IX, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).  More simply stated, "Title IX prohibits sex discrimination by recipients of federal education funding." Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173 (2005).

As an initial matter, plaintiffs cannot bring a Title IX claim against Defendant Hopkins, the school principal.  "Title IX reaches institutions and programs that receive federal funds…but it has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals." Fitzgerald v. Barnstable Sch. Comm., 555 U.S. 246, 257 (2009); see also Oldham, 138 F.4th at 742.  Accordingly, the Humphreys' Title IX claim against Defendant Hopkins will be dismissed.  As for Defendant Dunmore School District,

19

there is no dispute that it is a public school district and a recipient of federal education funding.

"[O]ne of the conditions attached to the receipt of Title IX funding is exposure to civil liability for violating Title IX's non-discrimination provisions." Oldham, 138 F.4th at 745 (citing Jackson, 544 U.S. at 182–83).  Sexual harassment is discrimination. See Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Ed., 526 U.S. 629, 650 (1999) ("Davis"). Title IX provides plaintiffs with a cause of action when a funding recipient is deliberately indifferent to known acts of student-on-student sexual harassment.  Id. at 648

To prevail on a Title IX deliberate indifference claim, the Humphreys must demonstrate that: 1) the defendant received federal funds; 2) sexual harassment occurred; 3) the defendant exercised substantial control over the harasser and the context in which the harassment occurred; 4) the defendant had actual knowledge of the harassment; 5) that defendant was deliberately indifferent to the harassment; and 6) the harassment was so severe, pervasive, and objectively offensive that it deprived their child access to the educational opportunities or benefits provided by the school. See Hall v. Millersville Univ., 22 F.4th 397, 408 (3d Cir. 2022); Davis, 526 U.S. at 645–50.

Defendant Dunmore School District argues that the facts alleged in the second amended complaint fall short of alleging a plausible Title IX claim.  Such

arguments concern the allegations related to: 1) sexual harassment and the severity of the harassment; 2) actual knowledge and deliberate indifference; and 3) deprivation of access to educational opportunities or benefits. The court addresses these groups of elements *seriatim*.

> ### i.    Severe, Pervasive, and Objectively Offensive Sexual Harassment

Student-on-student sexual harassment, if sufficiently severe, rises to the level of discrimination actionable under Title IX. Davis, 526 U.S. at 650. In moving to dismiss, school defendants argue that the incidents alleged had nothing to do with JH's gender and thus he did not experience sexual harassment. (Doc. 59 at 18–19). In making these arguments, the district also asserts that the incidents lacked severity. Id. Against the Humphreys' allegations, however, Dunmore School District's arguments are unpersuasive.

First, the recording of JH involved male masturbation. (Doc. 40, Second Am. Compl., ¶ 33). In the context framed by the facts of the second amended complaint, the students named in this action distributed a video of JH engaged in acts of a sexual nature in order to torment him or invite bullying upon him. Id. ¶¶ 32, 40, 43. Such conduct relates to JH's gender.

Second, "[w]hether gender-oriented conduct is harassment depends on a constellation of surrounding circumstances, expectations, and relationships… including, but not limited to, the harasser's and victim's ages and the number of

persons involved." <u>Davis</u>, 526 at 651 (citing <u>Oncale v. Sundowner Offshore Services, Inc.</u>, 523 U.S. 75, 82 (1998)).  Courts must bear in mind that children "may regularly interact in a manner that would be unacceptable among adults[,] and "at least early on…are still learning how to interact appropriately with their peers." <u>Id.</u>  "[S]tudents often engage in insults, banter, teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students subjected to it[,]" but damages are not available under Title IX "for simple acts of teasing and name-calling among school children…even where these comments target differences in gender." <u>Id.</u> at 651–652.  Rather, in the context of student-on-student sexual harassment claims, damages are only available "where the behavior is so severe, pervasive, and objectively offensive that it denies its victims the equal access to education that Title IX is designed to protect." <u>Id.</u> at 652.  The events alleged in this case go beyond simple acts of teasing and name-calling.  The Humphreys' allegations set forth that JH experienced severe, pervasive, and objectively offensive sexual harassment.

### ii.    Actual Knowledge and Deliberate Indifference

The district also asserts that the Humphreys failed to plead actual knowledge and deliberate indifference. (Doc. 59, Br. in Supp. at 20).  The court notes the high bar set in Title IX cases. <u>See</u> <u>McAvoy v. Dickinson Coll.</u>, 115 F.4th 220, 227 (3d Cir. 2024).  That is, "funding recipients are properly held liable in

damages only where they are deliberately indifferent to sexual harassment, of which they have actual knowledge[.]" Id. (quoting Davis, 526 U.S. at 650).  "To establish liability for deliberate indifference under Title IX, a plaintiff must show that an 'appropriate person' had actual notice of harassment." Hall v. Millersville Univ., 22 F.4th 397, 410 (3d Cir. 2022).  "[A]n educational institution has actual notice of harassment if the institution 'knows the underlying facts, indicating sufficiently substantial danger to students, and was therefore aware of the danger.' " Id. (quoting Bostic v. Smyrna Sch. Dist., 418 F.3d 355, 361 (3d Cir. 2005)).

Defendant Dunmore School District argues that the allegations fail to satisfy the actual notice requirement. (Doc. 59 at 21–22).  The Humphreys, however, make their case two different ways.  They cite a similar incident from 2021 where a student photographed a special education student using the restroom. (Doc. 40, Sec. Am. Compl. ¶¶ 86, 109).  Per the plaintiffs, it was common knowledge in the district that cellphones were being used to photograph and record other students in the restrooms. Id. ¶ 88.  As for the incidents involving JH, the Humphreys allege that the district, through Defendant Hopkins, had actual notice that the video of JH was circulating amongst students on March 31, 2023, if not earlier. Id. ¶¶ 48, 50.  The other allegations challenge the school's response after being provided with actual notice about the video

23

involving JH, including in investigating the incident, removing students involved in circulating the video, and addressing at least one further instance of students bullying JH about the video. Id. ¶ 84, 90.  The second amended complaint thus sufficiently alleges actual notice on the part of Defendant Dunmore School District.

Additionally, the Humphreys must also demonstrate deliberate indifference. Davis contemplates that a school can be deliberately indifferent based on its response to student-on-student sexual harassment by responding or attempting to remediate in a "clearly unreasonable" manner.  526 U.S. at 644, 648.  Under the law, where a funding recipient such as a public school has not directly engaged in the harassment, its deliberate indifference must cause the harassment or make the victim vulnerable to it. See McAvoy, 115 F.4th at 228 (citing Davis, 526 U.S. at 644–45).  Moreover, "deliberate indifference occurs only where the Title IX recipient's response 'is clearly unreasonable in light of the known circumstances.' " Id. (quoting Davis, 526 U.S. at 648).  "Whether the recipient's response meets that standard is a question of fact." Id. (citing Hall, 22 F.4th at 410–11).

Here, the Humphreys' fact allegations target the school's pre-incident conduct.  As alleged, a similar incident occurred in 2021 involving another male student with disabilities, and the district did not enforce their own policies and

24

procedures to prevent the incident with JH from happening. (Doc. 40, Second Am. Compl. ¶ 86).  The Humphreys' allegations also focus on the school's post-incident measures.  The plaintiffs characterize Defendant Hopkins's response as attempts to sweep the matter under the rug after a cursory investigation. <u>Id.</u> ¶ 139.  To further the investigation and obtain recourse, the Humphreys had to go directly to the school resource officer and involve the municipal police department. <u>Id.</u> ¶ 75.  Plaintiffs also allege that students involved in circulating the video either remained enrolled in the district or were reenrolled sometime after juvenile delinquency petitions were filed by authorities. <u>Id.</u> ¶ 80. Additionally, the Humphreys allege that JH experienced subsequent heckling about the subject matter of the video without those students being disciplined. <u>Id.</u> ¶¶ 89, 90.  These allegations thus sufficiently state that the actions and inactions by district administrators caused sexual harassment, made JH more vulnerable to sexual harassment, or both.

### iii.    Deprivation of Educational Opportunities and Benefits

Additionally, to recover under Title IX, "severe, pervasive, and objectively offensive conduct" must also undermine and detract from a student's educational experience, such that the student is effectively denied equal access to an institution's resources and opportunities. <u>See</u> <u>Davis</u>, 526 U.S. at 651 (citing <u>Meritor Sav. Bank, FSB v. Vinson</u>, 477 U.S. 57, 67 (1986)).  Defendant Dunmore

School District contends that JH was not denied educational opportunities or benefits under the facts pled. (Doc. 59, Br. in Supp., at 22).  However, the Humphreys allege that the Dunmore School District's failed to take proper remedial actions, including actions designed to continue JH's participation in the mainstream environment of his school, which he enjoyed prior to the incident. (Doc. 40 ¶¶ 24, 133, 156).  According to the plaintiffs, the district "has also deferred JH's ability to be engaged and be included in age-appropriate social, educational, and vocational programs, to take advantage of opportunities and services to which he would have had access if he had received appropriate related services and accommodations in a timely and effective manner." Id. ¶ 133.  While the Humphreys offer such allegations to support disability discrimination claims, this case involves circulation of a video of JH involved in sexual conduct and the subsequent difficulties JH experienced at school because of that video.  The allegations offered to support the Humphreys' disability discrimination claims also permit reasonable inferences that JH has been denied equal access to Dunmore School District's resources and opportunities on the basis of sex.  Accordingly, the motion to dismiss the Humphreys' Title IX claim against Defendant Dunmore School District will be denied.

### c. The Humphreys' Section 1983 Claims

The second amended complaint also asserts claims under Section 1983 for violation of JH's constitutional rights.[8]  Defendants Hopkins and the Dunmore School District also move to dismiss the Section 1983 claims in Count I and II for under Rule 12(b)(1) and Rule 12(b)(6).  To reiterate, Count I of the second amended complaint includes both reference to elements of a Section 1983 claim and IDEA subject matter, i.e. denial of a FAPE. (Doc. 40 ¶ 102).  Additionally, Count II advances a Fourteenth Amendment claim, which alleges that same denial. Id. ¶ 120.

As for Count I, the Section 1983 component will be dismissed as a matter of law.  Congress did not intend Section 1983 to be available to remedy violations of the IDEA such as those alleged by the plaintiffs in Count I. See A.W., 486 F.3d at 803.  As for Count II, which alleges violation of the Due Process and Equal Protection Clauses, that claim is also grounded in the school defendants' alleged failure to provide JH with a FAPE.  Count II is likewise subject to dismissal under A.W.

---

[8] Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials.  The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law.  See Gonzaga Univ. v. Doe, 536 U.S. 273, 284–85 (2002).

There are some items worth additional mention, however.  Within Count I, the Humphreys briefly reference a violation of JH's right to be free from invasion of his personal security and his right to bodily integrity, suggesting claims for violation of the Due Process Clause of the Fourteenth Amendment.  Id. ¶ 114. Count II alleges that JH's Fourteenth Amendment rights were violated.  Id. ¶¶ 119–24.  Within that portion, the Humphreys allege that the school defendants discriminated against JH and other students with disabilities in violation of the Equal Protection Clause. Id. ¶ 120.  That same paragraph contends that school defendants' disability discrimination also violated the Due Process Clause. Id. ¶ 120.  Within Count II, the Humphreys also allege that the conduct of the school defendants "shocks the conscience," which would pertain to a claim for violation of JH's substantive due process rights under a state-created danger theory of liability. Id. ¶ 124.  On the other hand, neither Count I nor Count II spell out facts supporting that theory.

There are also other Section 1983 causes of action to consider.  Count VII asserts a separate Section 1983 claim against Defendant Dunmore School District for failure to train and failure to supervise. Id. ¶¶ 173–81.  Those allegations further reference a failure to protect JH from harm based on a prior incident, which would also be relevant to a state-created danger theory of liability. Id. ¶ 176, Count VIII advances a claim against Defendant Dunmore School

28

District for "Vicarious Liability," which contains allegations relevant to the Section 1983 claims and the state tort claims asserted against the school defendants in later counts. Id. ¶¶ 182–91.

The overall effect is a disjointed pleading, which prevents the court from fully understanding what the plaintiffs are trying to allege with regard to any of the alleged constitutional violations. For their part, the school defendants move to dismiss all of the Section 1983 claims, tailoring their arguments to the disorganized nature of the allegations.

Rather than dismiss the remaining Section 1983 claims in a summary manner, the court will make a few more points about the claims touched upon in the second amended complaint. The court will then consider whether the Humphreys should be provided with leave to file a third amended complaint as requested in their brief in opposition to the school defendants' motion to dismiss. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007) ("in civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile.")

Starting at the beginning, two criteria must be met to establish a claim under Section 1983. First, the conduct complained of must have been committed by a person acting under color of state law. Sameric Corp. of Del., Inc. v. City of

Phila., 142 F.3d 582, 590 (3d Cir. 1998). Second, the conduct must deprive the plaintiff of rights secured under the Constitution or federal law. Id.  The school defendants argue that the Humphreys fail to allege any violations of JH's constitutional rights in order to recover under Section 1983.

The court construes the Humphreys' allegations in the counts mentioned above as asserting violations of JH's equal protection and substantive due process rights.

### i.    Equal Protection Claims

The Fourteenth Amendment prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND XIV, §1.  The Equal Protection Clause directs that "all persons similarly situated should be treated alike." City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  To succeed with a Section 1983 claim for a denial of equal protection, plaintiffs must prove the existence of purposeful discrimination and demonstrate that they received different treatment from that received by other individuals similarly situated. Chambers ex rel. Chambers, 587 F.3d at 196.

Additionally, "successful equal protection claims may be brought by a 'class of one,' where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)

30

(per curiam). "[A] class of one can attack intentionally different treatment if it is irrational and wholly arbitrary." Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 286 (3d Cir. 2004) (quoting Olech, 528 U.S. at 564) (cleaned up). "An essential element of a claim of selective treatment under the Equal Protection Clause is that the comparable parties were 'similarly situated.' " Startzell v. City of Philadelphia, 533 F.3d 183, 203 (3d Cir. 2008) (quoting Hill v. City of Scranton, 411 F.3d 118, 125 (3d Cir. 2005)). "Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.' " Id. (quoting Nordlinger v. Hahn, 505 U.S. 1, 10 (1992)).

The Section 1983 portions of the Humphreys' second amended complaint reference disability discrimination. At this juncture, the Humphreys set forth that JH has disabilities and has experienced disability discrimination. Nonetheless, although the court has determined that the Humphreys have plausibly alleged a Title IX claim based on deliberate indifference to sexual harassment, the second amended complaint does not provide facts permitting a reasonable inference that Defendant Hopkins or others employed by the Dunmore School District intentionally or purposefully discriminated against JH based on his disability.

### ii.    Substantive Due Process and State-Created Danger Claims

The Fourteenth Amendment also prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law. U.S. CONST. AMEND

31

XIV, §1.  "Individuals have a constitutional liberty interest in personal bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment." Phillips, 515 F.3d at 235 (citations omitted).  Generally, the state's failure to protect an individual against private violence does not deprive that individual of their substantive due process rights. DeShaney v. Winnebago Cnty. Dept of Soc. Servs., 489 U.S. 189, 197 (1989).  The Third Circuit Court of Appeals, however, has adopted a "state-created danger" exception to that general rule. See L.R. v. Sch. Dist. of Philadelphia, 836 F.3d 235, 242 (3d Cir. 2016) (citing Kneipp v. Tedder, 95 F.3d 1199, 1211 (3d Cir. 1996)).  Despite recent criticism of the doctrine, the Third Circuit has not retracted this theory of Section 1983 liability.  Johnson v. City of Philadelphia, 975 F.3d 394, 400 (3d Cir. 2020).

To plead a constitutional violation using the state-created danger doctrine, a plaintiff must establish the following four elements: 1) foreseeable and fairly direct harm; 2) action marked by a degree of culpability that shocks the conscience; 3) a relationship with the state making the plaintiff a foreseeable victim, rather than a member of the public in general; and 4) an affirmative use of state authority in a way that created a danger, or made others more vulnerable than had the state not acted at all. Id. (citing Sauers v. Borough of Nesquehoning, 905 F.3d 711, 717 (3d Cir. 2018)).

For the reasons set forth above, the second amended complaint does not clearly articulate that the Humphreys are proceeding under the state-created danger doctrine or provide facts supporting all the above elements.  In their brief in opposition, the Humphreys' attempt to bolster this ostensible claim through argument.  "[A] complaint may not be amended by the briefs in opposition to a motion to dismiss." Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (citation omitted).  Thus, arguments advanced by the Humphreys regarding their undeveloped pleading will not be considered.

### iii.    Claims Against Dunmore School District

As for the Humphreys' Section 1983 claims against Dunmore School District, the school defendants argue that such claims fail to satisfy the requirements set forth in Monell v. New York City Dept. of Social Servs., 436 U.S. 658 (1978) and subsequent case law clarifying the boundaries of municipal liability.  Under the law, a municipality like Dunmore School District cannot be held liable under Section 1983 solely because it employs a tortfeasor, i.e., on a respondeat superior theory of liability. Monell, 436 U.S at 691.  Rather, Dunmore School District is liable only for injuries caused by a municipal policy or custom. Id. at 690–91.

This may be alleged in several ways under existing precedent.  First, plaintiffs may proceed against a municipality where the unconstitutional action

alleged "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Id. at 690. Here, the Humphreys cite the Dunmore School District school handbook and attach it as an exhibit to their second amended complaint. (Doc. 40 ¶¶ 4, 27–30, 36, 38; Doc. 40-1).  There are no allegations that the cellphone policy or student recording policy are themselves unconstitutional.

Rather, the Humphreys allege that a paper policy was not being enforced and that this led to JH's constitutional injuries.  Caselaw allows for those types of assertions to proceed in different ways.  Among the ways a municipal liability case may proceed are allegations implicating: 1) "the decisions of a government's lawmakers"; 2) "the acts of its policymaking officials"; and 3) "practices so persistent and widespread as to practically have the force of law[,]" which constitute "official municipal policy[.]" Connick v. Thompson, 563 U.S. 51, 61 (2011) (citing Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986) (plurality opinion); Adickes v. S.H. Kress & Co., 398 U.S. 144, 167–68 (1970)).

Regarding the three options referenced in Connick, the second amended complaint mixes and matches these theories.  The Humphreys allege that Defendants Hopkins and the Dunmore School District "had a policy and/or custom of ignoring actual knowledge of violations of JH's rights by both the [d]istrict and other students, and fail[ed] to appropriately investigate situations

34

where inappropriate conduct was reported and/or suggested; ignor[ed] its mandatory reporting obligation; and discourag[ed] teachers and students from reporting abuses in an effort to protect themselves and their respective administrators, teachers, employees, and students from scandal, adverse publicity and/or accountability." (Doc. 40, Second Am. Compl. ¶ 92). Additionally, the Humphreys allege that the school defendants "have unconstitutional customs, policies and practices of failing to investigate evidence of School District employees' failure to enforce rules and regulations in place along with failing to appropriately investigate misconduct, abuse and or [sic] harassment against Dunmore students by other Dunmore students in the nature of violations of their rights to personal security, bodily integrity, as well as their right to be free from misconduct and/or abuse and/or harassment and/or discrimination[.]" Id. ¶ 104.

The issues inherent in this style of pleading aside, the second amended complaint does not advance any facts that decisions were made by government lawmakers, i.e., the school board.[9]  Instead, the Humphreys' allegations advance

---

[9] Pennsylvania's Public School Code of 1949 ("School Code"), 24 PA. STAT. §1-101, *et seq.* and its attendant regulatory scheme governs the hierarchy of public school administration in the Commonwealth.  Generally, "the public school system of the Commonwealth shall be administered by a board of school directors[.]" 24 PA. STAT. § 3-301.

that the alleged constitutional violations stemmed from the decisions of Defendant Hopkins, the school principal.

To recover against Dunmore School District on this theory of municipal liability, based on "the acts of its policymaking officials," the Humphreys must allege that Defendant Hopkins possessed final policymaking authority. See McGreevy v. Stroup, 413 F.3d 359, 368 (3d Cir. 2005) (discussing Pembaur, 475 U.S. at 480)).  An official has final policymaking authority if "as a matter of state law, the official is responsible for making policy in the particular area of municipal business in question" and if "the official's authority to make policy in that area is final and unreviewable." Hill v. Borough of Kutztown, 455 F.3d 225, 245 (3d Cir. 2006) (internal citations omitted) (emphasis removed). "Proving that a municipal official is a final policymaking authority is a fundamental element" of a Section 1983 action.  LaVerdure v. Cnty. of Montgomery, 324 F.3d 123, 126 (3d Cir. 2003).

The Humphreys do not allege that Defendant Hopkins is a final policymaker as a school principal in the second amended complaint.  Rather, the plaintiffs only identify "Dunmore School District" as a final policymaker for the purpose of implementing district policies and customs.  (Doc. 40 ¶ 115).  In their brief in opposition to the motion to dismiss, plaintiffs add to their allegations by arguing that Defendant Hopkins is a final policymaker.  (Doc. 64 at 21).  Even if the court

were to ignore this improper attempt to amend the operative complaint through argument, the Humphreys' allegations fall short.

State law reflects that school boards and superintendents are final policymakers depending on the type of action alleged, not school principals. See McGreevy, 413 F.3d at 368–69 (discussing Pennsylvania's School Code). The law would permit recovery if the Humphreys could prove that the school board or superintendent ratified unconstitutional decisions of Defendant Hopkins or delegated power to Defendant Hopkins to make those decisions. See Kelly v. Borough of Carlisle, 622 F.3d 248, 264 (3d Cir. 2010) (citing LaVerdure, 324 F.3d at 125); see also City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988). But those types of allegations are not included in the Humphreys' second amended complaint. Consequently, the Humphreys cannot proceed on allegations related to the acts of the district's policymaking officials. The motion to dismiss Count VIII for "vicarious liability" will be granted to the extent that it relates to the Section 1983 claims.

That leaves one more policy-or-custom theory of municipal liability which focuses on governmental customs. See Monell, 436 U.S. at 690–91 ("local governments… may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."); Est. of Roman v.

City of Newark, 914 F.3d 789, 798 (3d Cir. 2019) (explaining that, with a custom, a plaintiff is not required to prove formal approval by the municipality) (citation omitted).  To succeed on this theory, a plaintiff must first identify a custom. Second, that custom must be "so widespread as to have the force of law." Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 404 (1997) ("Bryan County") (citing Monell, 436 U.S. at 690–91; Adickes, 398 U.S. at 167–68). Third, a plaintiff must demonstrate "an 'affirmative link' between the…custom and the particular constitutional violation he alleges." Est. of Roman, 814 F.3d at 798 (quoting Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990)).  That affirmative link may be proven by showing that the municipality had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that the municipality's failure, at least in part, led to the plaintiff's injury. See id. (citation omitted).

For their part, the Humphreys have identified at least two customs, that is, a custom of non-enforcement of the school cellphone policy and a custom of allowing students to take cellphones into the restrooms. (Doc. 40 ¶¶ 36–39, 82, 100, 104, 109–110).  They have not, however, alleged "persistent and widespread" practices "so permanent and well settled as to constitute a 'custom or usage' with the force of law." Monell, 436 U.S. at 691 (quoting Adickes, 398 U.S. at 167–68).  The second amended complaint identifies two incidents relative

to non-enforcement of the cellphone policy at the Dunmore Junior-Senior High School, JH's incident in 2023 and a similar incident in 2021. (Doc. 40 ¶¶ 82, 86). Two incidents do not demonstrate a widespread custom.  Moreover, there are no other allegations to support a claim based on a widespread custom of allowing students to take their cellphones into the restrooms.

Furthermore, as indicated above, Count VII alleges that Defendant Dunmore School District failed to train and supervise its employees and that such failures led to JH's constitutional injuries.  (Doc. 40 ¶¶ 173–181).  This is a separate, distinct way the Humphreys may proceed against the district under Section 1983 aside from asserting an unconstitutional policy or custom. See Forrest v. Parry, 930 F.3d 93, 105–06 (3d Cir. 2019).

Under certain circumstances, a municipality may violate Section 1983 by failing to train or supervise its employees. City of Canton, Ohio v. Harris, 489 U.S. 378, 380 (1989); Forrest, 930 F.3d at 105; Est. of Roman, 914 F.3d at 798–99.  To satisfy Section 1983, a municipality's failure to train or supervise its employees in a relevant respect must be caused by an inadequacy that reflects deliberate or conscious choice, Forrest, 930 F.3d at 105, or amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact[,]" Connick, 563 U.S. at 61 (quoting City of Canton, 489 U.S. at 388). "A plaintiff sufficiently pleads deliberate indifference by showing that '(1)

municipal policymakers know that employees will confront a particular situation[,] (2) the situation involves a difficult choice or a history of employees mishandling[,] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights.' " Est. of Roman, 914 F.3d at 798 (quoting Doe v. Luzerne Cnty., 660 F.3d 169, 180 (3d Cir. 2011) (internal quotation marks omitted)).  A Section 1983 plaintiff must also demonstrate that the defendants' actions were the proximate cause of the violation of his federally protected right." Rivas v. City of Passaic, 365 F.3d 181, 193 (3d Cir. 2004).

Nonetheless, the Humphreys have not sufficiently alleged an underlying constitutional violation.  Thus, their failure-to-train and failure-to-supervise claims cannot stand on their own. See Kneipp, 95 F.3d at 1212 n.26.

### iv.    Leave to Amend

As to the Section 1983 claims, the court must offer amendment unless an amendment would be inequitable or futile. Fletcher-Harlee Corp., 482 F.3d at 251.  On one hand, allowing the filing of a third amended complaint would provide the counseled plaintiffs with a fourth attempt to state plausible Section 1983 claims against Defendants Hopkins and Dunmore School District.  On the other hand, the court has determined that the Humphreys' have stated plausible claims for relief under the ADA, Section 504 of the Rehabilitation Act, and Title IX.  With additional facts and with a clearer style of pleading, the Humphreys may

be able to advance plausible claims for the violation of JH's constitutional rights. It is equitable to provide the Humphreys with one final attempt to allege viable Section 1983 claims against the school defendants. Additionally, the court cannot say for certain that amendment would be futile. Accordingly, the Humphreys will be provided with leave to amend their Section 1983 claims only.

### d. The Humphreys' State Law Claims

The second amended complaint also asserts claims against the school defendants under state tort law. As discussed above, Count VII asserts a claim against Defendant Dunmore School District for vicarious liability without delineating the legal basis for these allegations. The only remaining way to construe the allegations in Count VII is for the purposes of state law tort claims. Furthermore, Count IX claims that Defendants Hopkins and the Dunmore School District were negligent. Count X advances breach of contract claims against these defendants based on the provisions of the school's student handbook. Count XII asserts a claim for intentional infliction of emotional distress ("IIED") against Defendant Hopkins.

As for the claims for breach of contract, the Humphreys indicate that "there is no...authority to support its claim that the student handbook is a contract when the institution is public in nature." (Doc. 64 at 45). Based on the Humphreys'

position, Count X will be dismissed with prejudice without further analysis of state contract law.

With the contract claim dismissed, the court turns to the school defendants' arguments in support of dismissing the Humphreys' tort claims. Specifically, Defendants Hopkins and the Dunmore School District assert that they are immune from all tort claims asserted in the second amended complaint. (Doc. 59, Br. in Supp. at 29–30).

Local agencies and governments such as school districts are generally immune from tort liability under Pennsylvania's Political Subdivision Tort Claims Act, 42 PA. CONS. STAT. §§ 8541–42. ("PSTCA"). See Sanford v. Stiles, 456 F.3d 298, 315 (3d Cir. 2006) ("[L]ocal agencies such as school districts are given broad tort immunity."); Wells v. Harrisburg Area Sch. Dist., 884 A.2d 946, 948 (Pa. Commw. Ct. 2005). Pursuant to Section 8541 of the PSTCA, "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person[,]" except as otherwise provided in the PSTCA. 42 PA. CONS. STAT. § 8541. Section 8542 provides exceptions to that immunity under certain circumstances. See Zauflik v. Pennsbury Sch. Dist., 104 A.3d 1096, 1100 (Pa. 2014).

In opposition to the motion to dismiss, the Humphreys sidestep the Dunmore School District's immunity assertions. They contend that it is improper for the court to consider such arguments on a motion to dismiss because governmental immunity is an affirmative defense to these tort claims. (Doc. 64 at 42).

Generally, the Federal Rules of Civil Procedure require defendants to plead affirmative defenses in their answer, not in a motion to dismiss. Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (citation omitted). In the Third Circuit, however, any affirmative defense may be raised in a motion to dismiss if the defense is apparent on the face of the complaint. Lupian v. Joseph Cory Holdings LLC, 905 F.3d 127, 130 (3d Cir. 2018); Rycoline Prods., Inc. v. C & W Unlimited, 109 F.3d 883, 886–87 (3d Cir. 1997); Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978).

The immunity provided by the PSTCA is an affirmative defense. See Gale v. City of Philadelphia, 86 A.3d 318, 319, n. 1 (Pa. Commw. Ct. 2014). Thus, that defense must be apparent from the face of the Humphreys' complaint for the court to consider the school defendants' PSTCA immunity arguments. Because this case involves tort claims against a Pennsylvania public school district, defenses under the PSTCA are "manifest in the complaint itself." Cf. In re Asbestos Prods. Liab. Litig. (No. VI), 822 F.3d 125, 133 n. 6 (3d Cir. 2016)

43

(discussing the application of federal preemption defenses at the Rule 12(b)(6) stage).  Accordingly, the court will consider the PSTCA defenses on a motion to dismiss.

The PSTCA bars any state tort claims against local agencies unless those claims fall within one of nine defined areas.[10] 42 PA. CONS. STAT. §§ 8541–42. Relevant here, the General Assembly amended the PSTCA six years ago to include a sexual abuse exception at 42 PA. CONS. STAT. § 8542(b)(9). See Act of Nov. 26, 2019, P.L. 641, 2019 Pa. Legis. Serv. Act 2019-87 (H.B. 962), Section 7 (West).

Relative to the sexual abuse exception, Section 8542 now provides:

> (a) **Liability imposed.** -- A local agency shall be liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):
>
> (1)  The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and

---

[10] Those categories, which provide exceptions to immunity, are: 1) vehicle liability; 2) care, custody, or control of personal property; 3) real property; 4) trees, traffic control, and street lighting; 5) utility service facilities; 6) streets; 7) sidewalks; 8) care, custody, or control of animals; and 9) sexual abuse. 42 PA. CONS. STAT. § 8542(b)(1)-(9).

44

(2)     The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, "negligent acts" shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.

(b) **Acts which may impose liability.** -- The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency: . . .

(9)     *Sexual abuse.* -- Conduct which constitutes an offense enumerated under [42 PA. CONS. STAT. §] 5551(7) (relating to no limitation applicable) if the injuries to the plaintiff were caused by actions or omissions of the local agency which constitute negligence.

42 PA. CONS. STAT. § 8542(a)-(b), (b)(9).

The sexual abuse exception cross-references nine (9) specific sex offenses where there is no statute of limitations for prosecution when the victim is under eighteen (18) years of age.[11] See 42 PA. CONS. STAT. § 5551(7).  Those nine (9) offenses are: 1) trafficking in minors, 18 PA. CONS. STAT. § 3011(b); 2) involuntary servitude of a sexual nature, 18 PA. CONS. STAT. § 3012; 3) rape, 18 PA. CONS. STAT. § 3121; 4) statutory sexual assault, 18 PA. CONS. STAT. § 3122.1; 5) involuntary deviate sexual intercourse, 18 PA. CONS. STAT. § 3123; 6) sexual

---

[11] The Supreme Court of Pennsylvania is currently considering whether the sexual abuse exception is only applicable to plaintiffs who were minors at the time they were victimized. City of Philadelphia v. J.S., 316 A.3d 619 (Pa. 2024).

assault, 18 PA. CONS. STAT. § 3124.1; 7) institutional sexual assault, 18 PA. CONS. STAT. § 3124.2; 8) aggravated indecent assault, 18 PA. CONS. STAT. § 3125; and 9) incest, 18 PA. CONS. STAT. § 4302.

The conduct described in the second amended complaint does not fit within the elements of the above offenses. Moreover, with Section 8542(b)(9), the General Assembly has not included other specific offenses relevant to the facts alleged in this case, that is, disseminating images or videos of individuals engaged in sexual acts. Specifically, transmission of sexually explicit images by a minor, 18 PA. CONS. STAT. § 6321, is not an included or referenced offense in Section 8542(b)(9). The court need not conduct any further analysis as to the immunity of Defendant Dunmore School District. The Humphreys' state law tort claims against the district are barred by the PSTCA.

As for Defendant Hopkins, "[a]n employee of a local agency is liable for civil damages on account of any injury to a person... caused by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency and subject to the limitations imposed by the [PSTCA]". 42 PA. CONS. STAT. § 8545. That provision does not apply where "it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct." 42 PA. CONS. STAT. § 8550.

46

In opposition to the motion to dismiss, the Humphreys argue that Defendant Hopkins is not immune due to his actual malice and/or willful misconduct, focusing on a failure to enforce the district cellphone policy and, by extension, allowing students to take their cellphones into school restrooms. (Doc. 64 at 42–43). Those assertions do not amount to actual malice, which has been defined as "the deliberate intent to commit an injury as evidenced by external circumstances." Palmer v. Bartosh, 959 A.2d 508, 513 (Pa. Commw. Ct. 2008) (citation omitted). Thus, the court focuses on whether the allegations in the second amended complaint could support a finding of willful misconduct on the part of Defendant Hopkins.

"Willful misconduct has been defined by the Pennsylvania Supreme Court as 'conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied.' " Sanford v. Stiles, 456 F.3d 298, 315 (3d Cir. 2006) (quoting Renk v. City of Pittsburgh, 537 Pa. 68, 641 A.2d 289, 293 (1994)). Explained differently, "willful misconduct" is synonymous with an intentional tort. See id. Under Pennsylvania law, recklessness is not a sufficiently culpable state of mind. Bright v. Westmoreland Cnty., 443 F.3d 276, 287 (3d Cir. 2006) (citing Williams v. City of Philadelphia, 569 A.2d 419, 421–22 (1995)). Neither is deliberate indifference.

Id. Even wanton misconduct will not get around the statutory immunity provided to public officials. Williams, 569 A.2d at 421–22.

Here, all the allegations against Defendant Hopkins take the form of omissions or failures to act. As alleged, Hopkins failed to enforce a district cellphone policy. (Doc. 40, Second Am. Compl. ¶¶ 36, 188). Per the Humphreys, Hopkins failed to thoroughly investigate students sharing the recording of JH, id. ¶¶ 49–53, and told JH's parents that nothing more could be done, id. ¶¶ 54, 57. Additionally, according to the second amended complaint, a similar incident occurred in 2021 where one student took a photograph of another student with special educational needs using the restroom. Id. ¶ 86. The Humphreys take the position that Defendant Hopkins, among some unnamed others, did nothing to prevent an incident like that from happening again. Id. ¶ 89. Rather, as asserted, based on "the complete lack of supervision" and "sham policies," it should have been expected by Defendant Hopkins that another incident would and did occur. Id. ¶ 189.

After careful consideration, the Humphreys merely allege that Defendant Hopkins acted negligently, carelessly, and recklessly and that he failed to take action after an earlier incident. Under Pennsylvania law, the failure to take greater precautionary measures in light of known circumstances "exemplifies a reckless disregard of the existing danger[.]" Williams, 569 A.2d at 421–22. That

supports a finding of "wanton, not willful, misconduct." Id.  Consequently, all of the allegations against Defendant Hopkins fail to overcome the immunity provided to him by Pennsylvania law.

Nonetheless, because "willful misconduct" is equivalent to an intentional tort under Pennsylvania law, the court will also consider the IIED claim as alleged against Defendant Hopkins.  To plead an IIED claim, a plaintiff must set forth facts supporting four elements: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." Jordan v. Pennsylvania State Univ., 276 A.3d 751, 775 (Pa. Super. Ct. 2022) (adopting trial court opinion), app. denied, 296 A.3d 1081 (Pa. 2023), cert. denied, 144 S. Ct. 432 (2023), reh'g denied, 144 S. Ct. 714 (2024) (citations omitted).  As for the element of extreme or outrageous conduct, the Humphreys have alleged that their child's school principal failed to prevent something outrageous from happening, not that he was the person directly involved in that extreme conduct.  Thus, even if the court takes all the allegations against Defendant Hopkins as true and construes all inferences from those allegations in favor of the Humphreys, the plaintiffs have not alleged a plausible IIED claim.  Consequently, the school defendants' motion to dismiss the state tort claims in Counts VIII

(vicarious liability), IX (negligence), and XII (IIED) will be granted and those claims will be dismissed with prejudice.

### e. Punitive Damages

There is one last matter to consider regarding the school defendants' motions to dismiss.  The school defendants also seek dismissal of the Humphreys' claims for punitive damages asserted throughout the second amended complaint and in Count XIII.  The school defendants' motion will be granted based on the rulings above.  Punitive damages are not recoverable in actions brought pursuant to the ADA, the Rehabilitation Act, or Title IX. See Barnes v. Gorman, 536 U.S. 181, 189 (2002).  Moreover, municipalities are immune from punitive damages under Section 1983.  City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981).  Additionally, all claims asserted against Defendant Hopkins have been dismissed pending a potential third amended complaint.  Thus, the court need not address punitive damages as to this defendant.

### f. Summary

For the reasons discussed above, the motion to dismiss filed by Defendants Timothy Hopkins and Dunmore School District will be granted in part and denied in part.  The motion to dismiss will be granted as to Counts I–III, Counts VII-X, and Counts XII–XIV.  The IDEA and state law claims will be

dismissed with prejudice.  Furthermore, as for the Title IX claims asserted in Count VI, the motion will be granted as to Defendant Hopkins but denied as to Defendant Dunmore School District.  The Humphreys, however, will be provided leave to file a third amended complaint regarding their Section 1983 claims only.  Should they fail to file a third amended complaint within thirty (30) days, Defendant Hopkins will be dismissed from this action with prejudice.  Additionally, in the absence of a third amended complaint, the Section 1983 claims against Defendant Dunmore School District will be dismissed with prejudice.

## 2. Parent Defendants' Motions to Dismiss

After focusing on the allegations and claims specific to Defendants Hopkins and the Dunmore School District, the court turns next to the other responding defendants in this action, Defendants Greg and Lindsay Hunt ("the Hunts"), Frank and Jolane Sottile ("the Sottiles"), Greg and Nicole Wolff ("the Wolffs"), and Anthony and Michelle Cantafio ("the Cantafios") (collectively "the parent defendants").  These defendants are the parents of MH, LS, JW, and CC, respectively.  The Humphreys' second amended complaint asserts state law negligent entrustment claims against the parent defendants for providing their children with the cellphones used to circulate the video of JH.  The Humphreys also assert IIED claims against the parent defendants as the parents and natural guardians of the minors named in this action.  In moving to dismiss, the parent

defendants argue that these claims are implausible as alleged or fail as a matter of law.

### a. Negligent Entrustment

As to the claims for negligent entrustment advanced in Count XI against the individual parent defendants, Pennsylvania has adopted Section 308 of the Restatement (Second) of Torts.  Ferry v. Fisher, 709 A.2d 399, 403 (Pa. Super. 1998) (citation omitted).  Pursuant to Pennsylvania law, "[i]t is negligence to permit a third person to use a thing…which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing…in such a manner as to create an unreasonable risk of harm to others." Spencer v. Johnson, 249 A.3d 529, 563 (Pa. Super. Ct. 2021) (quoting Phillips v. Lock, 86 A.3d 906, 913 (Pa. Super. Ct. 2014)); see also RESTATEMENT (SECOND) OF TORTS § 308 (1965).  Under this theory, "liability is imposed upon a defendant because of his or her own actions in relation to the instrumentality or activity under his or her control." Ferry, 709 A.2d at 403 (citing Christiansen v. Silfies, 667 A.2d 396, 400 (Pa. Super. Ct. 1995)).  Thus, with a claim for negligent entrustment, a parent's liability is not "dependent on, derivate of, or imputed from" their child's actual liability for damages.  See Christiansen, 667 A.2d at 400 (citations omitted).

Pennsylvania negligent entrustment law has developed in cases involving, for example, negligent entrustment of a motor vehicle, see e.g. Spencer, 249 A.3d at 563–64, and negligent entrustment of a firearm, see e.g. Rogers v. Thomas, 291 A.3d 865, 884 (Pa. Super. Ct. 2023), app denied, 304 A.3d 706 (Pa. 2023).  Here, the Humphreys contend that the parent defendants negligently entrusted their children with cellphones. (Doc. 40, Sec. Am. Compl. ¶¶ 215–16, 218–228).

As alleged, the Humphreys' negligent entrustment claim is based upon social or cultural observations of minors "attempting to gain fame via the internet and social media applications through dangerous or criminal acts[.]" Id. ¶ 209. Per the Humphreys, "it is not unreasonable to think that minors who are provided with [cellphones] could attempt to utilize the camera and/or unrestricted access" to the internet and social media applications to cause harm to others. Id. ¶¶ 210-214.  According to the second amended complaint, the parent defendants knew or should have known that their children "could likely" use their cellphones in a manner that would unreasonably harm others like JH.  Id. ¶ 229.  Specifically, the Humphreys allege that the parent defendants failed to monitor their children's use of the cellphones, failed to use parental control features, failed to block applications that allow children to share pornographic materials, and failed in

53

providing them unrestricted access to the internet on their cellphone during school hours.[12] Id. ¶ 230.

In support of their motions to dismiss, the parent defendants advance a variety of arguments.  For example, the Wolffs argue that the court should not extend negligent entrustment claims to a child's use of a cellphone because such claims are novel. (Doc. 56 at 5).   The remaining parent defendants target the lack of any allegations setting forth that the parent defendants knew or should have known that their children intended or were likely to use their cellphones in a manner that would create an unreasonable risk of harm to others. (See Doc. 47, Sotille Br. in Supp. at 13–15; Doc. 54, Hunt Br. in Supp. at 10–13; Doc. 58, Cantafio Br. in Supp. at 11–13).  These defendants also assert that the Humphreys have admitted in their allegations that the children were co-owners of the cellphones, and the law does not permit recovery in this context. (Doc. 47, Sotille Br. in Supp. at 16–19; Doc. 54, Hunt Br. in Supp. at 14–17; Doc. 58; Cantafio Br. in Supp. at 13–16).

The Wolffs' arguments about the novelty of the Humphreys' negligent entrustment claims are unpersuasive. Section 308 of the Restatement (Second) of Torts refers broadly to the negligent entrustment of "a thing" and not certain

---

[12] In their brief in opposition, the Humphreys clarify that they are not asserting a general negligence theory of failure to supervise against the parent defendants. (Doc. 64 at 51).  Thus, the court will limit the analysis to claims for negligent entrustment under Pennsylvania law.

things or classes of things.  Consequently, Section 308 could be applied to parents of minors misusing cellphones, subject to the other requirements of that provision.

Nevertheless, the parent defendants' motions to dismiss the negligent entrustment claims will be granted.  To state a claim for negligent entrustment under Section 308, a plaintiff must allege that "the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others." RESTATEMENT (SECOND) OF TORTS § 308 (1965) (emphasis added).

Here, the Humphreys do not allege facts supporting their conclusion that the parent defendants knew or should have known that their children would use their cellphones in ways that would hurt people.  Instead, the Humphreys rely upon their views about the dangers of cellphones in the hands of middle schoolers as detailed above.  Furthermore, in their brief in opposition, the Humphreys liken this matter to other cases involving negligent entrustment of firearms because "[m]oving [d]efendants, along with much of society, are aware of the dangers of unfettered use of [cellphone] technology[.]" (Doc. 64 at 52).

Relative to these allegations about "today's day and age," the rule stated in Section 308 "has its most frequent application where the third person is a member of a class which is notoriously likely to misuse the thing which the actor

permits him to use." RESTATEMENT (SECOND) OF TORTS § 308 cmt. b. (1965).

According to comment b to Section 308, "it is negligent to place loaded firearms

or poisons within reach of young children or feeble-minded adults." Id.; see also

Rogers v. Thomas, 291 A.3d at 884 (quoting Mendola v. Sambol, 71 A.2d 827,

828 (Pa. Super. Ct. 1950)). From this comment, children are particularly known

in the common law to misuse dangerous, potentially deadly things and, as such,

that principle imputes certain knowledge to parents and other adults for the

purposes of a negligent entrustment claim.[13]

From this comment to Section 308, the Humphreys' limited factual

allegations could support a claim for negligent entrustment if this case involved

loaded firearms or poisons, since, under state law, adults innately know they are

likely to be misused by children. Pennsylvania courts, however, have not

determined that cellphones are in the same category as loaded firearms.

Although there are no state decisions to guide the way, the court predicts that the

Supreme Court of Pennsylvania would not reach this conclusion. See Nationwide

Mut. Ins. Co. v. Buffetta, 230 F.3d 634, 637 (3d Cir. 2000) (citations omitted)

---

[13] Section 308 also applies "where the actor entrusts a thing to a third person who is not of such a class, if the actor knows that the third person intends to misuse it, or if the third person's known character or the peculiar circumstances of the case are such as to give the actor good reason to believe that the third person may misuse it." RESTATEMENT (SECOND) OF TORTS § 308 cmt. b. (1965). In that type of case, actual or constructive knowledge is required and cannot be imputed. See e.g. Robare v. Pekarcik, 530 A.2d 534, 536 (Pa. Commw. Ct. 1987) (discussing Anderson v. Bushong Pontiac Co., 171 A.2d 771 (Pa. 1961); Gibson v. Bruner, 178 A.2d 145 (Pa. 1961); and Glass v. Freeman, 240 A.2d 825 (Pa. 1968)).

(outlining the duty to predict how the Pennsylvania Supreme Court would rule on an issue when there are no relevant reported decisions).  Thus, absent facts that the parent defendants knew or should have known that their children would hurt people through cellphone misuse, the Humphreys cannot state a claim for negligent entrustment against them.

Additionally, under Section 308, a plaintiff must allege that the "thing" permitted to be used by a third person was "under the control of the actor." See Wittrien v. Burkholder, 965 A.2d 1229, 1232 (Pa. Super. Ct. 2009) (citing RESTATEMENT (SECOND) OF TORTS § 308 cmt. b. (1965)).  "It is the right to control the [thing], rather than ownership that satisfies the control element under Section 308."  Rogers, 291 A.3d at 886 (citing Wittrien, 965 A.2d at 1233).

Here, the Humphreys' second amended complaint asserts that the parent defendants "were the owners and in dominion and control" of the cellphone and data plan used by their children to share the recording of JH to other students. (Doc. 40 ¶¶ 220, 222, 224, 226).  At the same time, however, the second amended complaint alleges that LS shared the video on school grounds by using Apple AirDrop in a manner that would impute knowledge of the video to Defendants Hopkins and the Dunmore School District. Id. ¶¶ 40–46. Furthermore, according to the school handbook attached to the operative pleading, the Dunmore School District mandates that, upon entering school,

students place all cellphones in district-owned lockers or in classroom device holders. (Doc. 40-1, Ex. A. at 29–30).  Per the policy, students violating this provision face confiscation of their cellphones and further discipline up to a suspension from school. Id.  In pleading facts supporting their claims against Defendants Hopkins and the Dunmore School District, the Humphreys specifically cite the lack of policy enforcement as a cause of some of the wrongdoing alleged here. (Doc. 40, Second Am. Compl. ¶¶ 39, 188) (alleging that Defendant Hopkins had day-to-day control over enforcement of the school handbook as school principal).

Along those same lines, pursuant to the Pennsylvania School Code:

> Every teacher, vice principal and principal in the public schools shall have the right to exercise the same authority as to conduct and behavior over the pupils attending his school, during the time they are in attendance, including the time required in going to and from their homes, as the parents, guardians or persons in parental relation to such pupils may exercise over them.

24 Pa. Stat. § 13-1317.

Thus, based on the facts alleged, Dunmore School District policy, and state law, the second amended complaint actually stands for the proposition that the parent defendants yielded control of the cellphones (or use of the cellphones) to teachers and administrators when their children went to school.  Additionally, there are no allegations that the children named in this action shared the

recording of JH outside the school day. <u>See</u> Doc. 40, Sec. Am. Compl. ¶¶ 40–46 (alleging that LS shared the video on school grounds via AirDrop);  ¶ 71 (not alleging the date and time that CM shared the recording in a SnapChat group); ¶ ¶ 72 (not alleging when LS sent the video to CC in response to CC's requests for the video on Monday, March 3 and Friday, March 7, 2023)).  These allegations call other allegations about the parent defendants' control of the cellphones into serious question.  At best, the Humphreys allege that the parent defendants only controlled the cellphones some of the time when their children were not at school.  For this additional reason, the Humphreys' negligent entrustment claims against the individual parent defendants lack plausibility and are subject to dismissal.[14]

---

[14] In their brief in opposition, the Humphreys also rely upon RESTATEMENT (SECOND) OF TORTS § 390 (1965) in advancing their negligent entrustment claims against the parent defendants. Section 390 provides that:

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

<u>Id.</u>

Section 390 applies when a plaintiff asserts that a defendant negligently entrusted a "dangerous instrumentality" to a child such as a firearm.  <u>K.H. v. J.R.</u>, 826 A.2d 863, 873 n. 13. (2003).  Critically, for these purposes, there are no allegations that cellphone use posed an unreasonable risk of physical harm to the children of the parent defendants as required by Section 390.  The Humphreys have also not alleged the requisite knowledge by the parent defendants required to state a plausible claim under Section 390 for the reasons set forth in the body of this memorandum.

**b. Intentional Infliction of Emotional Distress**

Count XII of plaintiff's complaint asserts a state law claim for intentional

infliction of emotional distress ("IIED") against MH, LS, JW, and CC through their

parents and natural guardians.  As indicated above, the Humphreys must

establish four elements to succeed on an IIED claim: (1) the conduct must be

extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it

must cause emotional distress; and (4) the distress must be severe. Jordan, 276

A.3d at 775.

Parent defendants each argue that plaintiffs failed to allege that JH

experienced physical harm.  Under Restatement (Second) of Torts § 46,

however, which is the basis for Pennsylvania law for the tort of IIED, "bodily harm

is not an essential element[.]" Bruffett v. Warner Commc'ns, Inc., 692 F.2d 910,

914 (3d Cir. 1982) (citing Chuy v. Philadelphia Eagles Football Club, 595 F.2d

1265, 1274 (3d Cir. 1979); RESTATEMENT (SECOND) OF TORTS § 46 & cmt. k

(1965); see also Hoy v. Angelone, 720 A.2d 745, 753 ("[o]ne who by extreme and

outrageous conduct intentionally or recklessly causes severe emotional distress

to another is subject to liability for such emotional distress, and if bodily harm to

the other results from it, for such bodily harm.") (quoting RESTATEMENT (SECOND)

OF TORTS § 46(1) (1965)).

However, if a showing of bodily harm is required, the Humphreys' second amended complaint alleges that JH sustained, among other things, "shock" and "anxiety." (Doc. 40 ¶ 113). The court can reasonably infer from these allegations that those ailments manifested themselves with physical symptoms. A reading of the entire pleading also reflects that severe emotional distress has been plausibly alleged here.

As the other elements, the Wolffs challenge the Humphreys' allegations relative to outrageous conduct. (Doc. 56 at 7). Liability attaches in IIED cases only where the "conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Hunger v. Grand Cent. Sanitation, 670 A.2d 173, 177 (Pa. Super. Ct. 1996) (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d)). "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' " Id. Based on this explanation of extreme and outrageous conduct, the Humphreys have plausibly alleged an IIED claim against the Wolffs based on the conduct attributed to JW in the second amended complaint. Consequently, all the parent defendants' motions to dismiss the Humphreys' IIED claims will be denied.

### c. Punitive Damages

The Cantafios, Hunts, and Sotilles move to strike Count XIII of the
Humphreys' second amended complaint, which asserts a separately pled request
for punitive damages.  Because the Humphreys are seeking punitive damages as
to the IIED claims, and because Count XIII contains one legal conclusion relative
to the allegations against the minors involved in this case, the court will grant the
motion and strike Count XIII as it relates to the parent defendants.  See Fed. R.
Civ. P. 12(f) ("The court may strike from a pleading…any redundant…matter").

While the other parent defendants only sought to correct the form of the
second amended complaint, the Wolffs move for dismissal of punitive damages
based on the substance of the allegations. (See Doc. 56 at 9).  Under
Pennsylvania law, "[p]unitive damages may be awarded for conduct that is
outrageous, because of the defendant's evil motive or his reckless indifference to
the rights of others." Bert Co. v. Turk, 298 A.3d 44, 61 (Pa. 2023) (quoting
RESTATEMENT (SECOND) OF TORTS § 908(2) (1965)).  Here, with respect to JW and
all of the minors named in this action, the Humphreys have alleged outrageous
conduct and conduct demonstrating a reckless indifference to the rights of
others.  Thus, the Wolffs' motion to dismiss will be denied in this respect.[15]

---

[15] The parent defendants all move to dismiss Count XIV.  Count XIV seeks attorneys' fees in
the event that the Humphreys prevail in their claims under the ADA and the Rehabilitation Act
as asserted against Defendant Dunmore School District. (Doc. 40, Second Am. Compl. ¶¶

In summary, the parent defendants' motions to dismiss will be granted in part and denied in part. The claims in Count XI against the parent defendants for negligent entrustment will be dismissed with prejudice. The motion to dismiss will otherwise be denied. Thus, the IIED claims will proceed. As for the motions from some of the parent defendants requesting to strike a redundant request for punitive damages in Count XIII, that motion will be granted. Plaintiffs' request for punitive damages will remain in the case, however, regarding the IIED claims based upon the alleged conduct of MH, LS, JW, and CC. Should the Humphreys' file a third amended complaint to assert claims against Defendants Hopkins and the Dunmore School District under Section 1983 in accordance with Section 1 of this memorandum, the claims in that amended pleading must reflect the court's rulings as to the responding parent defendants.

**Conclusion**

For the reasons set forth above, the motion to dismiss filed by Defendant Hopkins and the Dunmore School District, (Doc. 51), will be granted in part and denied in part. The school defendants' motion to dismiss will be granted as to Counts I–III, Counts VII-X, and Counts XII–XIV of the second amended complaint. The IDEA claims in Counts I and III will be dismissed with prejudice.

---

247–48). Since the second amended complaint does not seek payment of attorneys' fees by the parent defendants, the court need not address this argument.

As for the Title IX claims asserted in Count VI, the motion will be granted as to Defendant Hopkins but denied as to Defendant Dunmore School District.  The state law claims in Counts VIII, IX, and X will be dismissed with prejudice.  The IIED claim against Defendant Hopkins in Count XII will be dismissed with prejudice.  The requests for punitive damages in Count XIII will be dismissed. The school defendants' motion to dismiss will be otherwise denied.

The Humphreys will be granted leave to file a third amended complaint regarding their Section 1983 claims.  The Humphreys will be provided with thirty (30) days to file a third amended complaint.  Should they fail to file a third amended complaint within this timeframe, Defendant Hopkins will be dismissed from this action with prejudice.  In the absence of a third amended complaint, the Section 1983 claims against Defendant Dunmore School District will be dismissed with prejudice.

Additionally, the motions to dismiss filed by the parent defendants, (Docs. 45, 50, 53, 57), will be granted in part and denied in part.  The motions will be granted with regard to the negligent entrustment claims in Count XI and those claims will be dismissed with prejudice.  The motions to dismiss the IIED claims in Count XII will be denied.  The motions to strike the claim for punitive damages in Count XIII will be granted as redundant to the requests for relief regarding the claims for IIED.

64

An appropriate order follows.

Date: ___8/8/25___

_____
JUDGE JULIA K. MUNLEY
United States District Court